LOWE BROTHERS CRACKER Co. *et al. v.* BROOKE *et al.*

1. To obtain a receiver under the insolvent traders law (Code, §3149(a) as amended by the act of 1889), it is necessary that three unsecured creditors should unite in filing the petition, unless the petitioning creditors represent one third of the whole unsecured indebtedness of the insolvent debtor. If one of the three petitioning creditors be secured, whether by personal security or otherwise, he cannot be counted as an unsecured creditor.
2. If the secured creditor's place in the proceeding can be supplied by amendment bringing in another creditor not at first a party, the amendment must allege that such added creditor is unsecured.
3. The evidence adduced at the hearing showing that one of the petitioning creditors was secured by a solvent indorser, and was therefore not entitled to the harsh remedy afforded by the insolvent traders law, the judge erred in appointing a receiver and granting an injunction.

November 14, 1892.

Before Judge MARSHALL J. CLARKE. Fulton county. September 3, 1892.

On July 18, G. W. Brooke, Nelson Morris & Co., and J. J. & J. E. Maddox, for themselves and such others as might become parties plaintiff, alleging themselves to be creditors of the Lowe Brothers Cracker Company, a corporation, brought their petition against that corporation for injunction and receiver. At the hearing several others were made parties plaintiff, on their petitions alleging that they were creditors of the same corporation. On August 4, Atkinson & Burge were made parties defendant, on their petition alleging that they were creditors of the corporation by mortgage of July 16. On August 5, the corporation demurred to the petition; whereupon the plaintiffs offered an amendment thereto, verified that day, which was allowed over defendant's objection, and the demurrer was overruled. Upon the hearing on September 3, an injunction was granted and a receiver appointed. To these rulings, and to the admission of certain evidence over objection, the defendants excepted.

The petition alleged: The corporation is indebted to Brooke $875 principal, besides interest and attorney's fees, on two promissory notes, one for $537.50, dated April 23, 1892, and due sixty days after date; the other for $337.50, dated May 10, 1892, and due sixty days after date. It is indebted to J. J. & J. E. Maddox, a partnership, $140 besides interest and attorney's fees, on an acceptance of April 3, 1892, payable at forty days. It is indebted to Nelson Morris & Co., a partnership, $76.13 on account. Each and all of said amounts are past due and unpaid, and payment of them has been repeatedly demanded and refused. The corporation is a trader engaged in buying and selling personal estate, especially cigars; and it is a manufacturer engaged in the manufacture of biscuit and crackers to the extent of $5,000 per annum in value. It is insolvent. It is the owner of a large amount of machinery located at its factory site, which is fast becoming worthless through the neglect and inattention of its officers and agents, thereby injuring its property and making uncertain and doubtful the collection of the debts due by it. Its officers and agents for the last two months have been engaged in collecting the debts due it, and are failing and refusing to pay off the notes and accounts due to its creditors, which are undisputed and past due. Petitioners are unable to ascertain what disposition is being made of such assets, and are powerless to prevent their misapplication, unless by aid of the court. Each of the debts alleged to be due plaintiffs were incurred in the regular course of business of the defendant. Discovery is waived.

The demurrer was on the grounds, that the allegations are not sufficient in law to authorize the appointment of a receiver nor the grant of an injunction; it is not alleged that demand for the debts of plaintiffs was made after they fell due; and it is not stated that plain-

tiffs' debts are unsecured, nor that plaintiffs represent one third in amount of the unsecured creditors of defendant. The amendment alleged that the debts due each of the plaintiffs as set out in the petition, were each and all unsecured debts at the time of demand and at the time of filing the petition.

The defendant corporation answered: It is not, and was not at the time of the filing of the petition, a trader engaged in buying and selling personal estate, in buying and selling cigars, nor a manufacturer engaged in the manufacture of any kinds of biscuit or crackers to any extent whatever. Its officers and agents have not neglected its machinery, but have looked after it so far as they could. The building in which it once operated a factory was destroyed by fire on May 19, and its machinery and other property were then largely injured, and a great deal totally destroyed. Since that date its officers and agents have collected so many debts due it as they could, but they have appropriated the proceeds thereof to the satisfaction of its creditors so far as the same could be done; and the statement in the petition to the contrary is false. It is not true that each of plaintiffs has made repeated demands of defendant for payment of the debts claimed in the petition; on the contrary J. J. & J. E. Maddox have never made any demand for their debt, other than a notice from the bank in which said claim was left for collection before the filing of the petition; nor does defendant owe them the amount claimed in the petition, but only about $90, as it has paid them a credit on the acceptance of about $50. Further, this claim is secured by the personal indorsement of L. D. Lowe who is perfectly solvent and able to meet all his obligations, and expects to pay said debt in full of principal and interest. Atkinson & Burge alleged that on July 16, the corporation, being indebted to them $477.75, delivered to them a mortgage to the

machinery recently used by it, and to all and every article appertaining to said business; that their debt was due and unpaid on said date; that the mortgage was and is *bona fide*, and they object to the appointment of a receiver as to any of the property covered by it, for such receivership would be expensive and useless, as the mortgage in the end would take the proceeds of the machinery; and that the assets covered by the mortgage do not exceed, at a fair valuation, the amount of the mortgage.

The evidence for the plaintiffs showed as follows: Burbank, temporary receiver, swore that on demand the defendant turned over to him a number of books, ledgers, cash-books, journals, etc., and office stationery, two wagons and a cart, an engine and various implements of a cracker factory, about 7,000 cheap cigars, boxes, etc.; and that the cigars and boxes were not worth over $150, and all the remainder was worth at market value not over $1,000. He further swore that he was manager of Nelson Morris & Co., and that he demanded payment of the claim in their favor, of L. D. Lowe, president of the defendant corporation, after the debt was past due; and payment was refused. G. W. Jack, who had been superintendent of the defendant corporation, testified that the machinery and tools of the factory would not bring, if sold, over $1,000. J. E. Maddox swore that on or about July 11, after the cracker factory was burned, he was approached by Wade, general manager for the defendant corporation, who offered to sell him a quantity of cigars owned by the company; that he had bought of Lowe, president, and Wade, manager, about forty barrels of flour since the burning; that he demanded payment of the debt due J. J. & J. E. Maddox by the defendant corporation, after it became due and prior to this case, and payment was refused; that during the week preceding the filing of the petition, the officer and

agent of the defendant corporation called at the office of J. J. & J. E. Maddox and offered to sell them a quantity of cigars in payment of their note against said defendant, which they declined, and threatened suit if their debt should not be paid on or before the following Monday; and that after suit was filed, L. D. Lowe called and said he intended to pay no creditor of the company except such as had his personal indorsement. A. J. Kiser swore that the defendant corporation owed Wright, Reeves & Co. (parties plaintiff) $480.88. A. B. Harrison swore that this case was filed in the office of the clerk of the superior court on July 18, at 8.03 A. M. The restraining order was signed at 6.30 A. M. of the same day. There was testimony that on June 28, 1892, a judgment was rendered in the justice's court of the 1026 district G. M., in favor of Lowry Banking Co., for use, v. L. D. Lowe, for $30, that a fi. fa. was issued thereon July 29, which was unpaid on August 5, and that there has been more than one suit against said Lowe. The book of the defendant corporation showed that its liabilities exceeded its assets by $2,463.35. Its acceptance payable to J. J. & J. E. Maddox, attached to the petition, was indorsed by L. D. Lowe, and it was entitled to credits which would reduce it to about $90. A bank check of the corporation to Apgar & Co. (parties plaintiff) for $220.52, dated May 23, 1892, and alleged to have been protested, was introduced. Its book of minutes showed a resolution of July, 1892, directing its president to pay certain debts aggregating $6,849.00, which included the debts due Nelson Morris & Co., J. J. & J. E. Maddox, Apgar & Co., and Wright, Reeves & Co.

G. W. Brooke swore that the two promissory notes described in the petition were wrongfully and fraudulently taken possession of by L. D. Lowe who now claims that they were destroyed by him; that they are

not, and have not been since their seizure by Lowe, in Brooke's possession; that he demanded them of Lowe ; that the copies attached to the petition are true copies; that they are still due and unpaid, and after maturity he made demand of his claim of defendant, which was refused; that Lowe recently proposed to make exact copies of the two notes and deliver them to Brooke in place of those destroyed; and that Lowe admitted the company's insolvency on or about July 15, 1892.

For the defendants it appeared that the *fi. fa.* from the justice's court, above referred to, was paid in full on September 3, 1892; and the vice-president of the bank in favor of which the *fi. fa.* issued testified that Lowe would have paid up before, but he claimed that he had receipts which showed that he was entitled to credits as he thought. Lowe swore that he was solvent; that there was no unsatisfied judgment against him outstanding; that he was worth at least $7,350 net, consisting of an equity in the land on which the cracker factory building was located, three lots of land in Fulton county, solvent accounts, and money due him on account of insurance on the cracker factory building; that he never at any time told J. E. Maddox that the cracker company intended to pay no debts except those indorsed by himself; that G. W. Brooke now holds a note dated July 15, 1892, made by affiant, payable August 27, 1892, for the sum of the two notes sued on by Brooke in place of said two notes; and that he did not fraudulently take possession of said two notes from Brooke. Wade swore that all he offered to sell Maddox was to be credited to the account of the defendant corporation with J. J. & J. E. Maddox, and all sales were so credited. Defendants introduced an affidavit of G. W. Brooke, dated July 18, 1892, stating that he had that day instituted an action of trover against L. D. Lowe to recover three promissory notes: one for $537.50, dated April 23, 1892, due sixty days

after date, payable to G. W. Brooke and signed by Lowe Bros. Cracker Co.; one for $337.50, dated May 10, 1892, due sixty days after date, made by Lowe Bros. Cracker Co., and payable to G. W. Brooke; and one for $500, due December 1, 1892, signed by Everett, payable to and indorsed by L. D. Lowe; and that these three notes were then in the possession, custody and control of L. D. Lowe.   In rebuttal G. W. Brooke swore that the banks of the city and the Lowry Banking Co. do not open for business and the receipt of money on claims against persons before 9 o'clock A. M.; that L. D. Lowe was in the court's chambers at that hour on September 3; that the trover suit against Lowe was prepared by counsel for deponent, and the statement by Lowe that he had destroyed the notes was made before the justice of the peace when Lowe was being tried for cheating and swindling and for tearing the two notes, and was made after filing the suit in trover; that deponent denies that he held one note made and accepted in lieu of the two notes mentioned in the petition; that Lowe agreed to execute the one note with a mortgage, but refused to complete the contract, and deponent did not accept the one note referred to.   In behalf of Atkinson & Burge were introduced a note to them made by the defendant corporation, July 16, 1892, for $447.75, payable one day after date, with 8 per cent. interest, and attorney's fees; and a mortgage to secure the note, bearing the same date, indorsed: "Left with me for record at 12.25 o'clock A. M., July 18th, 1892, at my home. Geo. B. Forbes, Dept. Clk." "Filed for record 8.10 o'clock A. M., July 18th, 1892, and recorded in Book A2, 232, July 18th, 1892. G. H. Tanner, Clk." This mortgage covered all the machinery recently used by the corporation in the manufacture of crackers, etc., and every article pertaining to said business, said machinery consisting of an engine, cracker machines, etc.   Burge

and Atkinson swore that the mortgage is *bona fide*, and the note covers *bona fide* indebtedness; and that the statements contained in the note and mortgage and in their petition to be made parties defendant, are true. Hunter, a machinist, as well as Burge and Lowe, swore that the machinery in possession of the temporary receiver is not worth on the market exceeding $500.

READ & BRANDON and MAYSON & HILL, for plaintiff in error.

C. D. MADDOX and ALEX. & VICTOR SMITH, *contra*.

BLECKLEY, Chief Justice.

1. Waiving several questions as needless to be decided, the application for a receiver was defeated when it turned out at the hearing that one of the three original petitioners, to wit the firm of J. J. & J. E. Maddox, was not unsecured, but was a secured creditor. The petition did not allege that the petitioning creditors represented as much as one third of the whole unsecured indebtedness of the debtor corporation. This being so, in order to prevail it was necessary under the code, section 3149(a), as amended by the act of 1889, that all three of the petitioning creditors should prove to be unsecured. The secured one could not be counted; this left only two, and it was impossible, under the statute on which the proceeding was based, for two to prevail, unless they represented at least one third of the unsecured indebtedness of their debtor. There is no indication in the statute that the security which renders a creditor disqualified to petition is to be of one kind rather than another. Personal security will disqualify as effectually as would a mortgage, collaterals or any other species. In ordinary speech, a secured creditor is one who has security for his debt, and if he has this by reason of indorsement, guaranty or suretyship of a third person, he would be so denominated. We think the statute

contemplates anything as security which would be so regarded according to usage and ordinary modes of expression. The statutory meaning of "unsecured" is the same as the popular meaning of that term.

2. When three unsecured creditors are requisite to inaugurate a proceeding, and only two of that class join in it at first, it is questionable whether the place of the third can be supplied by adding another unsecured creditor by amendment pending the imperfect and unauthorized proceeding. But grant that this may be done, certainly the amendment should show on its face that the added creditor is unsecured. The petition was brought in the present case on the 18th of July, and on the same day a temporary restraining order was granted by the judge, who also appointed a temporary receiver. On the 3d of September thereafter the ultimate hearing for interlocutory receiver and injunction came on, and then it was that several other creditors petitioned to be made parties plaintiff, and orders were granted making them such parties. It did not appear from these petitions or orders that any of these added creditors were unsecured. Indeed, they did not present themselves on any idea or theory of taking the place of the Maddox firm in the original suit, but as additional parties seeking to share in the fruits of that suit, treating it as well brought in the beginning. The Maddox firm remained a party and insisted on occupying the position of an unsecured creditor. One of the firm swore to the truth of an amendment to the original petition filed on the same day the new parties were added, but sworn to and allowed previously, which amendment alleged that the debts due each of the complainants in the petition as set out therein are each and all unsecured. It is obvious that this amendment applied only to the claims of the three creditors who complained originally, and in nowise to the claims of the coplaintiffs who became parties after the amendment was verified and allowed.

3. By any fair construction of the evidence as a whole, it is manifest that the Maddox firm was a secured and not an unsecured creditor. The claim of that firm consisted of an acceptance of the corporation indorsed by L. D. Lowe, the president of the corporation, in his personal and individual capacity. There was an effort to prove his insolvency, but this was a complete failure. There can be no doubt that his name on the acceptance, whether he be held as indorser, guarantor or a joint acceptor, affords ample security for the payment of this debt. The facts in evidence make this perfectly clear. The case as one requiring three unsecured creditors to begin and carry it on broke down completely at the hearing on the merits, and irrespective of the minor questions involved in it, the judge erred in appointing a receiver and granting an injunction.

*Judgment reversed.*