CARLING v. SEYMOUR LUMBER CO. et al.

(Circuit Court of Appeals, Fifth Circuit. February 11, 1902.)

No. 1,110.

1. GEORGIA INSOLVENCY ACT—SUSPENSION BY BANKRUPTCY ACT.

The Georgia insolvency laws (Code Ga. 1895, c. 4, §§ 2716–2722), providing for the distribution of the assets of insolvents, and authorizing the chancellor to recommend to the creditors of the defendant that they release him from further liability, being in effect a state bankruptcy act, its operation was suspended by the passage of the bankruptcy act of 1898, and proceedings under the former act are void.

2. SAME—MORTGAGE—FORECLOSURE—PETITION—SUFFICIENCY—STATE RECEIVER—TRUSTEE IN BANKRUPTCY—RIGHT TO POSSESSION OF PROPERTY.

A petition in equity filed in the Georgia superior court, which, under Code Ga. § 2770, has jurisdiction of mortgage foreclosure suits, alleged that the plaintiff was a mortgage creditor of defendant, and contained all allegations necessary to authorize a foreclosure, alleged that defendant was insolvent, and asked the foreclosure of the mortgage, and the appointment of a receiver for the debtor's property; but other allegations and prayers for relief showed that the plaintiff had the insolvency law in view in framing his petition. Held, that the proceedings would be sustained as a mortgage foreclosure suit within the jurisdiction of the superior court, even though the bill was imperfect, and required amendment; and that the proceedings were not void as taken under the Georgia insolvency law (Code Ga. 1895, c. 4, §§ 2716–2722),

which was suspended by the passage of the bankruptcy act; and therefore that the possession of the mortgaged property by a receiver appointed by the state court would not be disturbed in bankruptcy proceedings against the debtor.

**3. SAME.**
A trustee in bankruptcy, of a bankrupt whose property has been seized under a mortgage and is in possession of a receiver appointed in the mortgage foreclosure suit by a state court of competent jurisdiction, is entitled to the possession of the property not covered by the mortgage, and to the excess of the proceeds of a sale of the mortgaged property over the mortgage debt and costs of foreclosure.

**4. SAME—COMITY.**
Where a trustee in bankruptcy is entitled to assets of the bankrupt which are in possession of a receiver appointed by a state court of competent jurisdiction, comity requires, as a general rule, that the trustee should first make application to the state court instead of the bankruptcy court for an order for the possession of such assets.

Petition for Revision of Proceedings of the District Court of the United States for the Southern District of Georgia.

For decision of district court reversed by this opinion, see 112 Fed. 323.

This is a petition in equity to this court, under the jurisdiction conferred on it by clause "b" of section 24 of the bankruptcy act of July 1, 1898 (30 Stat. 553), to superintend and revise in matter of law certain proceedings in bankruptcy of the district court of the United States of the Southern district of Georgia. A full statement of the facts will be necessary to make clear the questions that are raised by the petition.

### Proceedings in the State Court.

On the 1st day of October, 1900, the Exchange Bank of Macon, Ga., a corporation, filed in the superior court of Bibb county, Ga., a petition in equity against the Macon Sash, Door & Lumber Company, also a Georgia corporation, doing business in Bibb county. It is alleged in the petition that the defendant corporation was indebted to the petitioner in the sum of $13,350, evidenced by 18 promissory notes, each indorsed by W. J. Beeland and T. C. Hendricks. These notes were secured by a mortgage executed by the defendant company to the petitioner. This mortgage is on personal property and real estate described in the petition. It is alleged that the object of the mortgage was to create in favor of the petitioner a lien, not only on the entire contents of the defendant's storehouse and the entire plant and materials situated upon the described real estate, but also upon all additions that may be made thereto, until the said notes have been fully paid. The defendant, at the petitioner's request, on July 21, 1897, made to petitioner a second mortgage for the purpose of securing the same debt, shown by renewal notes. The second mortgage embraced other, and additional property to that described in the first mortgage. Copies of the two mortgages were made exhibits to the petition. It is alleged that the defendant and the indorsers on the defendant's notes are insolvent, and that the property described in the mortgages is deteriorating in value, and that the defendant owes other debts, evidenced by notes and open accounts, amounting to $11,500.10, and that judgments amounting in the aggregate to about $700 have been rendered against the defendant, which the defendant is unable to pay. It is also alleged that petitioner has demanded of the defendant payment of its indebtedness which had matured, and that defendant had failed to pay the same; that petitioner has no adequate or complete remedy against the defendant except in a court of equity, and that the interposition of a court of equity is demanded, both in the interest of all the defendant's creditors as well as of the defendant itself; that, in order to avoid a multiplicity of suits at law and the needless sacrifice of defendant's property, it is necessary that a court of equity, through its receiver, should administer and wind up the affairs of the said company,

converting its property and assets into cash. There is a prayer for process, and the following special prayers: "Wherefore it prays: (1) That the said defendant company be restrained and enjoined from selling, incumbering, or in any wise disposing of any of said property upon which plaintiff has its mortgage lien, and which is hereinbefore fully set forth and described. (2) That a permanent receiver be appointed by this court to take possession of the entire property and assets of every description, to administer the same under the direction and orders of this court, and to convert the same into cash at some early date for prompt distribution among defendant's various creditors, according to their respective priorities. (3) That all the other creditors of the said defendant company be allowed to become parties to this proceeding, which plaintiff prays may be taken as a creditors' bill, for the purpose of protecting the rights of all parties at interest. (4) Plaintiff prays that it may have a judgment and decree against defendant for the amount of its debt, and foreclosing its said two mortgages, and that the same may be decreed to be the highest and best lien upon the fund realized from the sale of the mortgaged property." This petition was signed by counsel, and duly verified. On October 2, 1900, the judge of the superior court of Bibb county, at chambers, made an order for the defendant to show cause on October 11th why the prayers of the petition should not be granted, and in the meantime restraining the defendant from incumbering or selling or in any way disposing of the property owned by it, and appointing Dupont Guerry temporary receiver of the defendant's property to take possession of and to hold the same subject to the further order of the court. Certain orders of continuance were then made on different dates. On the 27th of November, 1900, the defendant, the Macon Sash, Door & Lumber Company, filed an answer to the petition. The mortgage debt was admitted, the averment of insolvency was denied, and it was admitted that the machinery had deteriorated in value. It was claimed in this answer that its assets were largely in excess of its liabilities. On November 30, 1900, the superior court entered a formal decree appointing Thomas J. Carling permanent receiver to take possession, subject to the orders and directions of the court, of all the property, both real and personal, and choses in action, of every character, belonging to the defendant company. Carling was required to give and did give bond as such receiver in the sum of $10,000. There were many orders made in reference to the receivership, which it is unnecessary to state. It appears from the record that the receiver came into the possession, under these orders, of all the property embraced in the two mortgages, and of choses in action and other property not covered by the mortgages.

## Proceedings in the United States District Court.

On the 17th day of November, 1900, the Seymour Lumber Company and two other creditors of the Macon Sash, Door & Lumber Company filed a petition in the district court to have the latter company adjudged to be a bankrupt. On December 3, 1900, the lumber company filed an answer to the petition in bankruptcy, resisting the same, denying that it had committed an act of bankruptcy, denying that it was insolvent, and demanding a trial by jury. On motion of the Seymour Lumber Company and the other creditors, petitioners in said bankruptcy proceedings, on May 21, 1901, the district court made an order restraining the Exchange Bank of Macon, Ga., and others who had become parties to the said suit in the superior court of Bibb county, Ga., from further prosecuting that suit until the 1st day of July, 1901, and until the further order of the court. On November 25, 1901, the Macon Sash, Door & Lumber Company, having withdrawn its answer and demand for jury trial, was by said district court adjudged a bankrupt. On the same day, November 25, 1901, the district court made an order directing the marshal to take possession of the property of the bankrupt, and ordered Thomas J. Carling, the receiver theretofore appointed by the superior court of Bibb county, Ga., to surrender the same to the marshal. That part of the order relating to Carling is as follows: "That the said T. J. Carling be, and he is hereby, ordered and directed to deliver to said marshal all of the property, money, deeds, books, and papers of the said Macon Sash, Door & Lumber Company in his possession, custody, or control." The marshal

demanded of Carling that he surrender the property to him, and, Carling having failed to do so, the district court, on the petition and motion of the Seymour Lumber Company and others, the original petitioning creditors in the cause in bankruptcy, on November 29, 1901, made the following order: "Upon considering the foregoing petition, it is ordered by the court that the said T. J. Carling be and appear before the undersigned, judge of the United States district court for the Western division of the Southern district of Georgia, at the United States court house in Macon, Georgia, at 10 o'clock a. m., on the 2d day of December, 1901, then and there to show cause, if any he can, why he has refused to surrender the property, money, deeds, books of account, and papers of the said bankrupt, the Macon Sash, Door & Lumber Company, in his possession, custody, or control, described and mentioned in the order and warrant of seizure issued out of the said United States district court on the 25th day of November, 1901, and, in case he should fail to show such cause as aforesaid, why an attachment should not be issued against him for his disobedience to the orders of the court. Let the said T. J. Carling be served with a copy of the foregoing petition and this order forthwith."

Thomas J. Carling filed a written answer to this rule to show cause, in which he stated that he made the answer under the direction of the superior court of Bibb county, state of Georgia; that he held the property demanded of him by the marshal, not in his own right or personally, but as the receiver appointed by said state court in the case of the Exchange Bank of Macon against the Macon Sash, Door & Lumber Company. In this answer he stated that Dupont Guerry had been appointed the temporary receiver on October 2, 1900, and that subsequently, on November 30, 1900, he had been appointed permanent receiver by said state court; that the property had been continuously in the possession of the state court from October 2, 1900, when Dupont Guerry was appointed temporary receiver, up to the present time; that he employed counsel by leave of said court that appointed him, and had incurred expenses, and had not been paid anything for his services; and that he was under bond in the sum of $10,000 for the faithful performance of his duties as receiver. He attached to his answer a copy of the proceedings in the state court showing the petition, answer, and orders. Carling claimed in this answer that, the superior court having first taken jurisdiction of the property and having taken possession of it through its temporary and permanent receiver, the possession and control of the property ought not to be interfered with by the district court, and that in all of these proceedings he had acted in good faith, and without the purpose and intention to treat with disrespect any of the orders of the district court, and that he had not treated any of the orders of the court with disrespect; that in good faith he was advised and believed that as an officer of the superior court of Bibb county charged with the administration of the property, and under a bond for the faithful performance of his duties as receiver, he could not surrender the property except upon the order of the judge of the superior court, under which court he held his appointment. He attached to the answer copy of an order of the state court directing him not to surrender the property, but to show the fact and date of his appointment as receiver to the district court.

After hearing argument, the district court held that Carling's answer was insufficient, and on the 6th day of December, 1901, made the following order: "A rule having been issued out of this court requiring T. J. Carling, one of the defendants in the above-stated cause, to show cause before this court why he refused to surrender the property, money, deeds, books of account, and papers of the said bankrupt, Macon Sash, Door & Lumber Company, in his custody, possession, and control, described and mentioned in the order and warrant of seizure out of this court on the 25th day of November, 1901, with which order and warrant of seizure he had been duly served, and, in case he should fail to show such cause, why an attachment should not be issued against him for his disobedience to the order of this court; and the said T. J. Carling, for showing cause as required by said rule, having filed his answer and response therein, and the court having heard and considered the evidence in said matter submitted and the argument of counsel: It is now ordered, adjudged, and decreed by the court that the response

and showing made by the said T. J. Carling is insufficient: that the said T. J. Carling be, and he is hereby, peremptorily ordered, directed, and required to surrender and deliver to John M. Barnes, marshal of the United States for the Southern district of Georgia, all the said property, money, deeds, books of account, and papers of the said bankrupt, Macon Sash, Door & Lumber Company, in his possession, custody, and control, described and mentioned in the order and warrant of seizure issued out of this court in the above-stated cause, on the 25th day of November, 1901, by 10 o'clock a. m. on the 7th day of December, 1901, and, in case he should not so surrender and deliver the same, he shall be attached as for contempt of court."

Carling having failed to obey this order, the district court on December 7, 1901, made the following additional order: "It having been adjudged and decreed by the court in the above-stated cause, on the 6th day of December, 1901, after due notice and hearing, that T. J. Carling, one of the parties in said cause, was in contempt of this court in resisting and refusing to obey an order and warrant of seizure issued out of this court in said cause on the 25th day of November, 1901, requiring the marshal of said district to seize and take possession of, and the said T. J. Carling to deliver to said marshal, the property, money, deeds, books of account, and papers of the said bankrupt, Macon Sash, Door & Lumber Company, in his possession, custody, and control, and described and mentioned in said order and warrant of seizure, with which said order and warrant of seizure the said T. J. Carling has been duly served; and the said T. J. Carling having appeared in open court this day, and admitted that he had purged himself of said contempt so adjudged and decreed against him, by surrendering and delivering to said marshal said property, money, deeds, books of account and papers by 10 o'clock this day: It is now adjudged and decreed by the court that the said T. J. Carling is still in contempt of this court in refusing to surrender and deliver said property, money, deeds, books of account, and papers by 10 o'clock this day, as ordered and directed to do by this court on the 6th day of December, 1901. It is now ordered that the marshal of said district be, and he is hereby, directed and required, immediately after the expiration of 10 days from this date, unless the judgments, orders, and decrees adjudging and decreeing said T. J. Carling to be in contempt as aforesaid shall be sooner superseded according to law, to attach and seize the body and person of said T. J. Carling, and confine him in the common jail of Chatham county, Georgia, in said district, and there him safely keep until he shall have purged himself of the said contempt adjudged and decreed against him, by surrendering and delivering to the said marshal all of the property, money, deeds, books of account, and papers of the said bankrupt, Macon Sash, Door & Lumber Company, in his possession, custody, and control, described and mentioned in the order and warrant of seizure issued out of this court on the 25th day of November, 1901, or until the further order of this court."

The purpose of the petition for revision and review filed in this court is to revise, as matter of law, the foregoing proceedings in the court of bankruptcy; and it is alleged here that the court erred in making the foregoing orders of December 6 and December 7, 1901.

Washington Dessau and N. E. Harris, for petitioner.

John R. L. Smith and J. T. Hill, for respondents.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court. Under the Georgia system the superior courts have exclusive jurisdiction in cases affecting the title to lands and in equity cases. The superior court of Bibb county, Ga., is a court of general jurisdiction, and has the powers and jurisdiction of a court of chancery. Code Ga. 1895, § 5842. It has, by express statute, jurisdiction of suits to foreclose mortgages (Id. 2770); and to appoint receivers (Id. 4904). The judges of the superior courts

are, in equity cases, chancellors. While bills in equity are "abolished" (Id. 4931), they survive in the "petition," which is addressed to the court, and sets forth the cause of action, legal or equitable, or both, and claims legal or equitable relief, or both. Id. 4937.

Chapter 4 of the fourth title of the Georgia Code is entitled "Insolvent Traders." It embraces sections 2716 to 2722, inclusive, which are copied in the margin.[1] These sections, in brief, provide that when any corporation not municipal, or any trader being insolvent, fails to pay debts at maturity, creditors representing one-third or more of the unsecured debts of the insolvent may invoke by petition the power of a court of equity to collect the debts and distribute the assets of such insolvent. The chancellor is authorized, in cases where the insolvent has fairly surrendered his property for distribution, "to recommend to the creditors of the defendant that they may release him from further liability." This insolvent traders' act is held by the supreme court of Georgia to be a kind of state bankrupt law. Describing the procedure, the court said: "It is putting a trader in bankruptcy, and relieving him from past debts, as far as state legislation can do so." Comer v. Coates, 69 Ga. 491–495. In a later case this language is repeated and approved, and the court added: "The act does in many respects resemble the bankrupt acts of congress." Ryan v. Kingsbery, 88 Ga. 361–389, 14 S. E. 596, 605. The constitution limits the power of a state to legislate on this subject, for it is not permitted to so legislate as to impair the obligation of contracts. U. S. Const. art. 1, § 10. This act is clearly a state insolvency law, within the power of the state to enact when the congress has not exercised its power to pass a uniform bankrupt law. The administration of the estates of insolvents by the state courts under this statute would be inconsistent with the exclusive jurisdiction of the courts of bankruptcy under the bankrupt law. The passage of the bankrupt law by congress, therefore, suspended the operation of this state statute. Sturges v. Crowninshield, 4 Wheat. 122–196, 4 L. Ed. 529; Tua v. Carriere, 117 U. S. 201–210, 6 Sup. Ct. 565, 29 L. Ed. 855; Butler v. Goreley, 146 U. S. 303–314, 13 Sup. Ct. 84, 36 L. Ed. 981.

The main question of contention between the parties to this suit is whether or not the state court had jurisdiction of the suit in which it appointed the temporary and the permanent receiver. The solution of this question will answer others raised in the record.

It is contended by the creditors of the Macon Sash, Door & Lumber Company, who procured the adjudication in bankruptcy, that the state court had no jurisdiction of the case made by the petition in equity, and that, therefore, the appointment of the receiver is void. The argument is that the proceeding in the state court is based on the general insolvency laws, and that its purpose is to wind up and distribute the estate of an insolvent debtor. And it is asserted that the congress is vested by the constitution with power to establish uniform laws on the subject of bankruptcy for the purpose of administering and distributing the estates of insolvent persons (Const. art. 1, § 8); and

---

[1] See note at end of case.

that congress having exercised this power, and committed the administration of the bankrupt's estate exclusively to the courts of bankruptcy, proceedings in state courts in insolvency are void. If the state court's jurisdiction depended alone on the insolvent traders' law (Code Ga. 1895, §§ 2716-2722), its order appointing Carling receiver would be void. This is true because the passage of the bankrupt law by the congress rendered conflicting state insolvent or bankrupt laws void. Tua v. Carriere, 117 U. S. 201, 210, 6 Sup. Ct. 565, 29 L. Ed. 855; Butler v. Goreley, 146 U. S. 303, 314, 13 Sup. Ct. 84, 36 L. Ed. 981.

But was the jurisdiction of the state court dependent on the validity of these Georgia statutes relating to insolvency? We have seen that it had jurisdiction to foreclose mortgages and to appoint receivers. The only pecuniary claim asserted by the petitioner in the state court was secured by two mortgages. The petition contains a prayer to foreclose these mortgages. The notes secured by the mortgages have two indorsers. The insolvent traders' act, before it was superseded, must have been put in operation at the suit of "unsecured" creditors. Code Ga. 1895, § 2716; Cracker Co. v. Brooke, 91 Ga. 243, 18 S. E. 136. The appointment of a receiver is a jurisdiction often exercised by equity courts in foreclosure suits. The insolvent traders' law provides for a proceeding against insolvents only, and the petition alleges that the defendant therein is insolvent; but that allegation is proper, if not necessary, to obtain a receiver in a foreclosure suit. So of all the averments as to the business embarrassments of the defendant in the petition. They are usual in bills seeking the appointment of a receiver. It is true that the petition contains other averments that are unnecessary and unusual in a foreclosure suit, such as demand and refusal to pay, that the petition is for the benefit of the petitioner and other creditors, etc. These and other averments show that the pleader had in view the insolvent traders' law. But the bill contains all the allegations necessary to a valid decree appointing a receiver and foreclosing the two mortgages. The fact that it contains other and unnecessary averments, even if made to conform to a statute no longer operative, does not deprive the petition of equity, and defeat the jurisdiction as to the matters well pleaded. Conceding that the petition was imperfect and required amendments, it would not follow that the state court was without jurisdiction. The purpose of the petition was, among other things, the foreclosure of the mortgages and the possession of the property by a receiver to be appointed by the court; and when the court adjudged the petition sufficient, and made the appointment, that appointment cannot be questioned by another court, or the possession of the receiver appointed disturbed. Shields v. Coleman, 157 U. S. 168, 15 Sup. Ct. 570, 39 L. Ed. 660, at page 178, 157 U. S., page 574, 15 Sup. Ct., and page 660, 39 L. Ed.

A demurrer or plea to the entire petition for want of jurisdiction would not have been sustained, although part of its statement and prayer were based on matters as to which relief could not be granted. The Georgia statute in question being void, only that part of the petition dependent on it would have been subject to demurrer. Beach, Mod. Eq. Prac. 241. A demurrer or plea to the whole petition for want of jurisdiction would have been overruled. We think, therefore,

conceding the "traders' insolvent" law to be superseded and made void by the bankrupt law, that the state court had jurisdiction of the suit as one to foreclose a mortgage, and to appoint a receiver of the property covered by the mortgages.

The bankrupt act was unquestionably designed by the congress to secure the possession of the property of the bankrupt for administration under the proceedings in bankruptcy. The district court has authority, under paragraph 3 of section 2, to appoint receivers, or the marshals, upon application of parties in interest, in case the court shall find it absolutely necessary, for the preservation of estates, to take charge of the property of bankrupts after the filing of the petition, and until it is dismissed or the trustee appointed. Other provisions are in the act for the recovery of the bankrupt's property by the trustee when appointed. By authority so conferred, the district court, in a proper case, may direct the marshal, under summary process, to seize the property of the bankrupt in the hands of third persons claiming to own it (Sharpe v. Doyle, 102 U. S. 686, 26 L. Ed. 277; Feibelman v. Packard, 109 U. S. 421, 3 Sup. Ct. 289, 27 L. Ed. 984); may compel the return of property of the bankrupt illegally taken out of the possession of the referee in bankruptcy (White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183); and may take property from the possession of the purchaser from the assignee of the bankrupt under a general assignment (Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814). But it has not been held that property of the bankrupt in the hands of a receiver of a state court having jurisdiction can be so taken out of his possession. It is indicated in Moran v. Sturges, 154 U. S. 256, 283, 14 Sup. Ct. 1019, 38 L. Ed. 981, that the federal courts, in the exercise of their exclusive jurisdiction to enforce maritime liens, will not interfere with the actual possession of a state court. It was there said: "When its [the state court's] jurisdiction has determined, the admiralty courts may proceed." However this may be in cases of the exclusive jurisdiction of the federal courts, it is clear, on precedent and principle, that the federal courts will not interfere with the actual possession of a state court, through its receiver, of mortgaged property, in a case where the state court has jurisdiction to foreclose the mortgage. The case of Davis v. Railroad Co., 1 Woods, 661, Fed. Cas. No. 3,648, decided on circuit by Mr. Justice Bradley, is directly in point, so far as it applies to the property covered by the mortgages sought to be foreclosed in the state court. It was there held that a receiver in possession of mortgaged property under order of a state court of chancery, in proceedings for foreclosure begun prior to the commencement of proceedings in bankruptcy, cannot be dispossessed by order of the district court in the bankruptcy proceedings; "that a proceeding to enforce a mortgage or other specific lien involves the right of property, and possession in pursuance thereof, legally or judicially taken, before proceedings in bankruptcy, cannot be interrupted by those proceedings." This proposition is sustained by Eyster v. Gaff, 91 U. S. 521, 23 L. Ed. 403; for it is there decided that the foreclosure suit may proceed notwithstanding the proceedings in bankruptcy, and that the purchaser at the foreclosure sale will obtain a good title.

The orders made by the bankruptcy court which are under review were made on the theory that the proceeding in the state court was based alone on the insolvent traders' act, and that the appointment of the receiver was void. These orders, in effect, require the receiver of the state court to surrender to the marshal all of the property held by him as receiver. Part of this property, but not all of it, is covered by the mortgages sought to be foreclosed in the state court. No separate questions are raised as to the property not mortgaged. The orders made by the bankruptcy court which are submitted for review and revision relate to all the property held by the receiver.

A receiver or trustee, when appointed in the bankruptcy proceedings, while not entitled to the mortgaged property, will be entitled to any excess arising from the foreclosure sale, when made by order of the state court after the payment of the mortgages and costs of foreclosure. He will also be entitled, when appointed, to the possession of the choses in action and the other property in the hands of the state court's receiver which is not covered by the mortgages. The bankrupt law is equally binding on the state and the federal court, and we cannot doubt that the former will, on proper application, give full effect to it. Where assets are in the hands of the receiver of one court which legally and equitably belong to the trustee or receiver appointed by another court, comity requires, as a general rule, that application should be made for a proper order to the former court whose officer has possession of the property. This rule is reciprocal between the federal and state courts, each respecting the possession of the other. Hagan v. Lucas, 10 Pet. 400, 9 L. Ed. 470; In re Tyler, 149 U. S. 164.

The jurisdiction and authority of the bankruptcy court for the enforcement of the bankrupt law is paramount. State insolvency laws are superseded by the bankrupt act. While it is a general rule that a federal court may not enjoin proceedings in a state court, an exception is made in cases where such injunction may be authorized by any law relating to proceedings in bankruptcy. Rev. St. U. S. § 720. When the state court is in possession, through its receiver, of assets that it is without jurisdiction or authority to hold against a receiver or trustee appointed in bankruptcy proceedings, instead of making a peremptory order on the receiver of the state court to surrender the funds, an injunction, if necessary, might be granted by the bankruptcy court to prevent the unlawful distribution of the assets, until application could be made to the state court for an order to its receiver to surrender the assets to the proper custodian. The laws of the United States being equally binding on all the courts, we cannot assume that the state court would refuse to administer them. We are not now called on to decide what course should be taken in the event of a disregard of the bankrupt law by the state court. That such application should be made in the first instance to the state court is sustained, not only by the analogous cases relating to comity, but by adjudications directly in point on this question of practice under the bankrupt law. Mauran v. Carpet-Lining Co. (R. I.) 50 Atl. 331; In re Lesser (D. C.) 100 Fed. 433, 439; In re Kersten (D. C.) 110 Fed. 929, 931; In re Lengert Wagon Co. (D. C.) 110 Fed. 927; Ex parte Waddell, Fed. Cas. No.

17,027; In re Seebold, 45 C. C. A. 117, 105 Fed. 910; Scheuer v. Stationery Co. (C. C. A.) 112 Fed. 407.

The judgments of the court of bankruptcy rendered December 6, 1901, and December 7, 1901, are reversed.

### NOTE.

### Georgia Code 1895—Insolvent Traders.

"Section 2716 (3149a). Receiver for Insolvent Trader. In case any corporation not municipal, or any trader, or firm of traders, shall fail to pay, at maturity, any one or more matured debts, payment of which has been properly demanded of such debtor, and by him refused, and shall be insolvent, it shall be in the power of a court of equity, under a creditor's petition, to which one or more creditors, representing one-third in amount of the unsecured debt of such insolvent corporation, trader, or firm of traders, whose debts are matured and unpaid, shall be necessary parties, to proceed to collect the assets, real and personal, including choses in action and money, and appropriate the same to the creditors of such trader, firm of traders, or corporation.

"Sec. 2717 (3149b). Chancellor's Power in Such Cases. The chancellor, under such proceedings as are usual in equity, may grant injunctions, and appoint receivers for the collection and preservation of the assets in the cases provided by this chapter, and may at any time appoint an auditor and take all proper steps to bring the matter to a final hearing.

"Sec. 2718 (3149c). Who May Be Parties. Any creditor may become a party to said petition, under an order of the court, at any time before the final distribution of the assets, he becoming chargeable with his proportion of the expenses of the previous proceedings.

"Sec. 2719 (3149d). No Preferences; Assets, How Distributed. Upon the appointment of a receiver, no creditor shall acquire any preference, by any judgment or lien, on any suit or attachment, under proceedings commenced after the filing of the petition, and all assignments and mortgages to pay or secure existing debts made after the filing of said petition shall be vacated, and the assets be divided pro rata among the creditors, preserving all existing liens.

"Sec. 2720 (3149e). Allowance for Defendant's Support. It shall be in the power of the judge to make a suitable allowance for the defendant for a support during the pendency of the proceedings, having in so doing respect to the condition of the defendant and the circumstances of the failure.

"Sec. 2721 (3149f). Who is a Trader. Any person or firm shall be considered a trader who is engaged, as a business, in buying and selling real or personal estate of any kind, or who is a banker or broker or commission merchant, or manufacturer manufacturing articles to the extent of five thousand dollars per annum.

"Sec. 2722 (3149g). Chancellor may Recommend Debtor's Release. It shall be in the power of the chancellor, in his final judgment in the cases provided for, to express his opinion, if the facts authorize it, that, from the facts as they have transpired during the progress of the cause, the defendant has honestly and fairly delivered up his assets for distribution under the law, and to recommend to the creditors of the defendant that they release him from further liability."