### 773.  UNITED STATES FIDELITY AND GUARANTY COMPANY v. MURPHY, sheriff, for use, etc.

1. Where the obligation of a forthcoming bond is, by its terms, joint and severable, the obligee in the bond may sue the surety thereon without joining the principal.

2. An agent is authorized to execute a forthcoming bond for his principal without written authority.  Even if the principal should repudiate the act of the agent as unauthorized, this would not affect the liability of the surety; for in any event the surety is bound.  But in any case, the authority of the agent to execute such bond is immaterial, where the principal receives the property from the levying officer under the bond so executed.

3. After a claim has been interposed to personal property levied upon, and a forthcoming bond has been executed and delivered to a levying officer, and the property so levied upon released and delivered into the possession of the claimant and principal, neither principal nor surety can thereafter question the formal execution of the bond, and its approval and acceptance by the levying officer.

4. A lien of a judgment obtained more than four months prior to the filing of a petition in bankruptcy can not be divested by the adjudication. And where personal property has been levied upon and a forthcoming bond given therefor, the subsequent adjudication that the defendant in execution is bankrupt, and the seizure by the bankruptcy court of the

property levied upon and described in the forthcoming bond, can not affect the rights of the plaintiff in execution, and will not release the surety on the forthcoming bond from his obligation to produce the property according to the terms of the bond.

Action on bond, from city court of Albany—Judge Crosland. September 14, 1907.

Argued December 17, 1907,—Decided March 16, 1908.

In a suit on a forthcoming bond, Hobbs & Livingston obtained a judgment against the Minnesota Lumber Company; and execution was issued and levied upon certain personal property described in the levy and in the bond. This property was claimed by Clements, who executed a forthcoming bond, with the United States Fidelity and Guaranty Company as surety. Subsequently the claim interposed by Clements was withdrawn and the property was readvertised for sale, and, not being produced at the time and place of sale, in accordance with the terms of the bond, suit was filed against the surety by Murphy, sheriff, for the use of Hobbs & Livingston. The defendant filed a demurrer on the following grounds: (1) The petition is defective in that there is a non-joinder of parties defendant. The contract declared upon shows, that one T. B. Clements is the principal obligor, and that this defendant is only surety thereon, and that the contract is joint and not severable; and therefore a judgment can not be rendered against this defendant, unless judgment is rendered against the principal before or at the same time, there being no severable liability against this defendant under said bond. (2) It affirmatively appears that the bond declared upon was never attested, approved, or accepted by the levying officer, by any indorsement or signature thereon by said officer. The demurrer was overruled, and the defendant excepted.

The defendant pleaded non est factum as to Clements, the principal obligor in the bond; and on demurrer this plea was stricken, and the defendant excepted. The defendant further, as a special plea, set up its inability to deliver the property according to the terms of the bond, at the time and place of sale, by reason of the following facts: That immediately after the filing of the claim and the execution of the bond sued upon, the property levied upon and described therein was surrendered by the claimant to the Minnesota Lumber Company, defendant in execution, for its use.

Shortly afterwards, the Minnesota Lumber Company was adjudged an involuntary bankrupt. Its trustee in bankruptcy seized and sold this property, and applied the proceeds in satisfaction of liens superior to that of Hobbs & Livingston. The claim of Clements was withdrawn in the city court of Moultrie, where it was filed prior to the trustee's sale, and the purchaser at the sale acquired a legal title to the property. There are other defenses set up in the voluminous plea of the defendant, but the foregoing are alone material.

The case was tried by the judge without the intervention of a jury, upon an agreed statement of facts, substantially as follows: 1. On February 16, 1904, a common-law judgment was rendered in the city court of Moultrie in favor of Hobbs & Livingston against the Minnesota Lumber Company for $1,820 principal, and $180 attorney's fees. The Minnesota Lumber Company carried the case to the Supreme Court, where it was affirmed on condition that the attorney's fees be written off within a certain time. This was done as required, and the judgment of the Supreme Court was then made the judgment of the lower court. 2. The execution in favor of Hobbs & Livingston against the Minnesota Lumber Company was entered on the general execution docket of Colquitt county on March 2, 1904, and was also duly entered on the execution docket of the city court of Moultrie. This execution was properly levied on April 29, 1904, by the deputy sheriff of the city court of Moultrie, who was also deputy sheriff of Colquitt county, on the property set forth in the copy of the levy and the copy of the bond attached to the original petition in the instant case. 3. The sheriff of the city court of Moultrie duly advertised this property and was proceeding to sell it, as set out in the original petition, when the sale was arrested by the claim of Clements and the bond; and the sheriff, on account of the claim and this bond, failed to sell the property. The sheriff approved this bond and accepted it, though he did not write his approval on it. . He did write his approval on the claim bond (which was given at the same time), in the terms of the law, and on the same piece of paper, both the claim and the bond being written on the same piece of paper, the one following the other, and the security on each being the same. 4. The claim was voluntarily withdrawn by Clements on July 10, 1905, and the withdrawal entered on the record of the

city court of Moultrie. 5. The sheriff of Colquitt county, during the month of May, again legally advertised the said property for sale on the first Tuesday in June, 1907. The property was not forthcoming, and for that reason could not be sold. It was not produced at the time and place of sale by Clements or any one else. 6. After giving the bond, the property therein described remained where it was before and at the time of the levy, and continued to be used by the Minnesota Lumber Company. 7. On March 5, 1905, the Minnesota Lumber Company, upon the petition of unsecured creditors, was adjudicated a bankrupt, and Hobbs & Livingston were scheduled as lien creditors by the Minnesota Lumber Company in the bankruptcy proceedings. Hobbs & Livingston never at any time proved their claim in the bankruptcy court, nor in anywise recognized that court or had anything to do with it. No order was ever taken making them parties to that litigation. 8. On March 11, 1903, the Minnesota Lumber Company executed and delivered to the Southern Pine Company of Georgia a valid mortgage upon practically all its property, including that described in the levy of the sheriff and the forthcoming bond, for $15,000. This mortgage was duly recorded, and the property covered by it, exclusive of that described in the levy and bond in this case, at the time of the levy of this fi. fa. was worth at least $25,000. The value of the property levied on, and for which the forthcoming bond was given, was $2,500 at the time the claim was made and the forthcoming bond given. $4,000 was due to the Southern Pine Company on said mortgage by the Minnesota Lumber Company, at the time of the adjudication in bankruptcy. The Southern Pine Company proved its claim in bankruptcy. 9. On July 10, 1907, the referee ordered that all the property of the bankrupt, except specified real estate, be sold, free from all liens and incumbrances, and that said liens and incumbrances be discharged as against the property and attach upon the proceeds thereof, with the same right to creditors against the proceeds as they had against the property. This order was passed at a meeting of the creditors of the bankrupt, after notice had been given to all the creditors scheduled by him, including Hobbs & Livingston. On July 17, 1905, after due advertisement according to the order of the bankrupt court, the property of the bankrupt, including that described in the levy and the forthcoming bond in the instant case, except

one locomotive engine described in said levy and bond, was sold at auction in Colquitt county for $562; and on July 31, 1905, the said locomotive engine was sold by the trustee in bankruptcy for $331. 10. On August 7, 1905, at a legal meeting of the creditors of the bankrupt, held for the purpose of hearing the trustee's report, the sale of all of the said property was confirmed unto the Southern Pine Company of Georgia, it being the purchaser at the trustee's sale and thereby acquiring the title to all the property of the bankrupt, so far as the bankrupt court could vest title, including the property described in the levy of the sheriff and the forthcoming bond, and the proceeds of the sale were, under order of the referee, distributed among the creditors of the bankrupt, holding liens upon the property, which liens, together with the cost of administration by the bankrupt court, consumed all of the assets of the Minnesota Lumber Company. All the property did not bring enough to pay in full the mortgage of the Southern Pine Company and the liens of the laborers and materialmen, in addition to the cost of administration in bankruptcy. The property brought at the trustee's sale $18,000. 11. All of the creditors who participated in the distribution of the assets of the Minnesota Lumber Company, with the exception of the Citizens Bank of Valdosta, the Merchants Bank of Valdosta, and the Southern Pine Company of Georgia, held liens, either as laborers or supply men, which, while they were superior in dignity to the liens of Hobbs & Livingston, were junior as to time; that is, those debts were contracted subsequently to the levy of the fi. fa. By statute, however, they were superior liens. 12. Before the Minnesota Lumber Company was adjudged bankrupt, Clements was adjudged a bankrupt by the United States District Court of Minnesota.

A judgment was rendered by the trial court against the United States Fidelity and Guaranty Company for principal and interest; and it excepted, making numerous assignments of error. Those deemed material are sufficiently indicated in the foregoing statement.

*T. H. Parker,* for plaintiff in error.

*Shipp & Kline, John D. Pope,* contra.

HILL, C. J. 1. The forthcoming bond executed by Clements, claimant, with the United States Fidelity and Guaranty Company as surety, was, by its express terms, "joint and severable," and

2

upon a breach of the bond· the obligee therein could sue either one or both of the obligors.

2. The plea of non est factum as to the principal was. properly stricken on demurrer. It is not necessary that the agent who executes a forthcoming bond for his principal should have written authority; neither is it necessary that such bond should be under seal; and the fact that the agent executes such bond under seal does not affect its validity. Civil Code, §3035; *Head* v. *Woods,* 92 *Ga.* 548 (17 S. E. 928). Even if the principal should repudiate the act of the agent, this would not affect the liability of the surety; for in any event the surety is· bound. Civil Code, §3035. In this case the act of the agent was fully ratified by the principal. The personal property described in the bond was delivered into the possession of the claimant upon the execution of the bond, and the claimant subsequently withdrew his claim and consented that the execution proceed.

3. The contention that there was no approval and acceptance of the forthcoming bond by the levying officer is eliminated by the stipulation that the sheriff did in fact approve and accept the bond; though he did not write his approval upon the bond itself, but wrote his approval upon the claim bond which was given at the same time and written upon the same piece of paper as the forthcoming bond. Besides, the parties to the bond all acted on it. The sheriff released the property and delivered it to the claimant, upon the execution of the bond; and the principal and the surety will now be estopped from questioning either its formal execution, or its approval and acceptance by the levying officer.

. There is no merit in the point that the suit should have been dismissed because the execution under which the property was advertised the second time was proceeding illegally, in that the execution had been changed by striking therefrom the amount of $180, attorney's fees. It is admitted in the agreed statement of facts that these attorney's fees were written off voluntarily by the defendant, as required by the judgment of the Supreme Court. After the judgment of the Supreme Court had been made the judgment of the lower court and the judgment for attorney's fees written off, the claimant, in judicio, withdrew his claim and consented that the fi. fa. based upon the said judgment should proceed. It therefore matters not who struck the attorney's fees from the

execution in order that it might conform to the judgment. It certainly could not result in injury to the defendant that the amount of the claim against him had been reduced to the extent of the attorney's fees. The alteration of the fi. fa. in this respect in no way affected the case, and was made in compliance with the judgment of the Supreme Court, and in conformity to the Civil Code, § 5114. In short, we think every fact material and necessary to show the liability of the defendant in this case is admitted: to wit, the execution and the levy, the value of the property levied upon, the giving of the bond and the breach of the bond; and the finding in favor of the plaintiff was demanded, unless the principal obligor in the bond and his security were released from their obligation by the bankruptcy of the Minnesota Lumber Company, the defendant in execution, and the seizure by the bankruptcy court of the property levied upon.

4. The bankruptcy court had no right to seize the property, which, four months prior to the adjudication in bankruptcy, had been levied upon under a valid process from the State court. If the forthcoming bond had not been given, clearly no other court or officer could take the property which had been seized by the sheriff by virtue of the execution against the defendant; and the forthcoming bond is simply a substitute for the property levied upon. It is well settled that the lien of a judgment obtained more than four months prior to the petition in bankruptcy is superior to the adjudication in bankruptcy, and that subsequent proceedings in bankruptcy do not divest jurisdiction of the State court to enforce such lien. 7 Rose's Notes on U. S. Reports, 1036. *Kaminsky* v. *Horrigan*, 2 *Ga. App.* 332 (58 S. E. 497); *National Surety Co.* v. *Medlock*, 2 *Ga. App.* 665 (58 S. E. 1131). More than four months before the adjudication in bankruptcy, the personal property described in the forthcoming bond was in the hands of the sheriff on final process. This property could not be legally taken from his possession by the bankruptcy court. *Fleming* v. *Odum*, 59 *Ga.* 363. The forthcoming bond being for the protection of the sheriff in surrendering his possession of the personal property to the principal in said bond, the trustee in bankruptcy had no legal authority to dispossess him; and it is not to be presumed that he could have done so if objections had been interposed either by the principal or the surety. It is true that the surety in this case

did bring to the attention of the bankruptcy court the judgment lien of Hobbs & Livingston upon the property described in the forthcoming bond, but it does not appear that any objection was made by the surety or the principal to the seizure of the property by the bankruptcy court. If timely and appropriate legal objection had been interposed, it can not be doubted that the bankruptcy court would have recognized the prior jurisdiction of the State court and released the property virtually in custodia legis under process from the State court. The seizure of the property by the bankruptcy court being illegal, and neither the surety nor his principal interposing any objection to such seizure, the surety, the defendant in this case, can not claim any benefit from the illegal seizure.

When property is taken and held under process, mesne or final, of a court of competent jurisdiction, it is in the custody of the law and within the exclusive jurisdiction of the court from which the process has issued, and the possession of the officer can not be disturbed by process from any other court. Corvell *v.* Heyman, 111 U. S. 176 (28 L. ed. 390, 4 Sup. Ct. 355) ; *Fulghum* v. *Williams Co.,* 114 *Ga.* 647 (40 S. E. 695, 1 L. R. A. (N. S.) 1055, 88 Am. St. R. 48.). We think the principle here announced applies to property seized under process and released by virtue of a statutory forthcoming bond. Eyster *v.* Gaff, 91 U. S. 521 (23 L. ed. 409) ; Carling *v.* Seymour, 113 Fed. 483 (51 C. C. A. 1). Of course, the discharge in bankruptcy of Clements, the principal in the forthcoming bond, in no wise affected the rights of the plaintiff, or released the surety from the obligation of his bond. Wolf *v.* Stix, 99 U. S. 1 (25 L. ed. 309) ; *Phillips* v. *Solomon,* 42 *Ga.* 192; *Kaminsky* v. *Horrigan,* supra. It is admitted by the learned counsel for plaintiff in error that the adjudication in bankruptcy, being more than four months after the rendition of the judgment, can not be set up as a matter of defense by the surety. But he insists that he is not setting up this adjudication as a defense, but claiming that before the time arrived for compliance with the obligation of the bond, the property described in the bond had been taken from the possession of the principal by the law, under and by virtue of a lien which was superior in dignity to the lien of the State process, under which the property was first seized. He bases this contention on the following facts: It was admitted

by the plaintiff in the court below, that the Minnesota Lumber Company, the defendant in execution, had executed and delivered to the Southern Pine Company a valid mortgage upon all of its property, including all that described in the levy of the sheriff and the forthcoming bond; that this mortgage was a lien of superior dignity to the judgment in favor of Hobbs & Livingston, and that the proof of this mortgage lien by the Southern Pine Company in the bankruptcy proceedings was tantamount to a foreclosure of the same.    It is contended that as all the property described in the forthcoming bond had been sold under direction of the court of bankruptcy, to satisfy this superior lien of the Southern Pine Company, the principal in the bond was discharged from a compliance with his obligation to produce the property at the time and place of sale, because he had no power to do so, it having been taken from his possession by the bankruptcy court before the time arrived for compliance with such obligation.    But the Southern Pine Company did not have the Minnesota Lumber Company adjudged a bankrupt.    The personal property covered by the forthcoming bond was not seized for the purpose of satisfying the lien of the mortgage in favor of the Southern Pine Company.    It was seized by the trustee in bankruptcy, and was sold and applied in payment, not only of the lien of the Southern Pine Company, but of other claims that were inferior to the fi. fa. in favor of the plaintiff in the court below.    The balance due on the mortgage of the Southern Pine Company was only $4,000.    The property seized by the sheriff, under the fi. fa. in favor of Hobbs & Livingston, described in the forthcoming bond, it is admitted, was of the value of $25,000.    The property of the bankrupt, when sold, brought the sum of $18,000, and the mortgage of the Southern Pine Company covered the entire property of the bankrupt.    Therefore, the property covered by the mortgage, excluding that which was levied upon by the fi. fa., was more than sufficient to pay off the balance due on the mortgage; and the holder of the fi. fa., under well known equitable principles, could have compelled the holder of the mortgage lien to make the money out of other property than that levied on by virtue of the State-court process, covered by the mortgage.    The other liens which were allowed to accumulate against the property levied upon by the State-court process and described in the forthcoming bond were all subsequent to that lien

and placed on the property after it had been turned back by the claimant into the possession of the defendant in execution, the Minnesota Lumber Company. Laborers' and supply men's liens, although superior to a lien of a judgment, under the facts of this case were not entitled to priority of payment out of the property which had been seized by the sheriff; for this property, although it had been turned over to the claimant upon the giving of the forthcoming bond, was, nevertheless, in the constructive possession of the State court by virtue of the levy, and no liens could thereafter be placed upon it which would change the status already acquired in the State court. The only lien, therefore, which was prior in dignity to that of the fi. fa. in favor of Hobbs & Livingston was that of the mortgage of the Southern Pine Company, on which there was only a balance due of $4,000; and this mortgage covered property which was worth $25,000, and which was actually sold by the trustee in bankruptcy for $18,000. All of the proceeds were administered by the bankruptcy court, and there was nothing left to satisfy the execution in favor of Hobbs & Livingston.

In our judgment, Hobbs & Livingston acted wisely in not going into the bankruptcy court, or in any way subjecting their rights to its adjudication. They were amply protected, under the facts of this case, by the forthcoming bond; and such rights can not be affected by the conduct of the claimant subsequent to the execution of the forthcoming bond, or the conduct of the defendant in execution in allowing liens to accumulate upon the property delivered into its possession by the claimant and covered by the forthcoming bond, nor by the unauthorized seizure by the bankruptcy court of the personal property which had been seized under valid process from the State court, and which had been released by the levying officer under the terms of the bond which the law accepted as a statutory substitute for its possession, the terms of which bond required that when it was called for by the State-court process, under which it had been seized, it should be produced.

The judgment in favor of the plaintiff, we think, was demanded by the evidence and the law applicable thereto.

*Judgment affirmed.*