[File No. 6229.]

BEN C. LARKIN et al., as the Board of Railroad Commissioners of the State of North Dakota, Respondents, v. WHEAT GROWERS WAREHOUSE COMPANY, a Corporation, Respondents,
and
MARYLAND CASUALTY COMPANY, a Corporation and Hartford Accident and Indemnity Company, a Corporation, Interveners and Appellants.

(253 N. W. 757.)

Opinion filed March 24, 1934.

*Conmy, Young & Conmy,* for interveners and appellants.

*O'Hare, Cox & Cox,* for L. E. Seidel and J. Mattheis, general creditors.

*Murphy & Toner,* for Wheat Growers Warehouse Company.

*J. A. Heder,* for respondents.

BURKE, J. In May, 1931, the Wheat Growers Warehouse Company, a corporation, appeared before the Board of Railroad Commissioners and presented a petition for the appointment of said Board of Railroad Commissioners as trustee for the said Wheat Growers Warehouse Company, under chapter 156, Session Laws, 1927, and the said Wheat Growers Warehouse Company requested the Board of Railroad Commissioners to present the same to the district court, together with the

answer of the said Wheat Growers Warehouse Company, alleging that the said warehouse company could not market the grain in its various elevators and could not pay, or apply, the proceeds of the grain upon the outstanding storage receipts and that the said warehouse company is unable to provide funds from other sources to pay and satisfy outstanding storage receipts. That a great many of the elevators, or warehouses, belonging to said warehouse company have but a small quantity of grain on hand and if the same could be promptly shipped out and disposed of said elevators could be closed, until the next season, and a great deal of expense saved to the respondent and the creditors; that respondent believes that if petitioners were appointed trustee that they would be able to promptly market the remaining grain on hand and effect a great saving and expense. Wherefore respondent agrees to the appointment of the petitioners as trustee aforesaid.

An order appointing the Board of Railroad Commissioners as trustee was duly made and the said Wheat Growers Warehouse Company turned over to the trustee all of the grain stored in its numerous warehouses. An action was brought by the trustee against the Wheat Growers Warehouse Company and the Maryland Casualty Company on the bond for a shortage in the warehouse at Burleigh, Burleigh county, North Dakota. A judgment was secured and affirmed by this court for the amount of the shortage at that place. State ex rel. Larkin v. Wheat Growers' Warehouse Co. 63 N. D. 641, 249 N. W. 718.

In marshaling the assets, under § 5 of chapter 156 of the Session Laws of 1927, the trustee sold all the grain, in all the warehouses, and placed the proceeds therefor in a fund, to which was added $18,012.10 demanded of and collected from the Maryland Casualty Company, surety on the bond of the Wheat Growers Warehouse Company, and $8,796.60, demanded of and collected from the Hartford Accident and Indemnity Company, surety on the warehouseman's bond of the Wheat Growers Warehouse Company on a different line of elevators. The money collected from the surety companies and the proceeds of the grain sold from all the defendant's warehouses were placed in the same fund. Out of this fund all expenses were paid and all of the outstanding storage warehouse receipts and sale tickets, with interest thereon, were redeemed, leaving a balance of $14,500.77. The Maryland Casualty Company intervened in the trustee proceedings, before any of the

fund was paid out claiming that it should receive out of this fund, left after redemption of all warehouse storage receipts and sale tickets, its proportionate share, which it alleges to be $9,200.21 and the Hartford Accident and Indemnity Company intervened, claiming that it is entitled to its proportionate share of said surplus, which it alleges to be $5,300.56.

Some of the general creditors of the Wheat Growers Warehouse Company also filed claims. The trial court did not pass upon the claims of the general creditors but did hold that the claims of the Maryland Casualty Company and the Hartford Accident and Indemnity Company were not superior to the claims of the general creditors and from such order the Maryland Casualty Company and the Hartford Accident and Indemnity Company appeal.

There is just one question involved and that is, who is entitled to this fund, after the redemption of all the warehouse receipts? Section 10 of chapter 155 of the Session Laws of 1927 requires every warehouseman to file, with the Board of Railroad Commissioners, a bond covering the period of the license and running to the State of North Dakota *for the benefit of all persons storing or selling grain or seeds in such warehouse.* The Wheat Growers Warehouse Company gave such a bond, as principal, upon which the Maryland Casualty Company was surety, for one line of warehouses, and, said warehouse gave another bond, as principal, for another line of warehouses upon which the Hartford Accident and Indemnity Company was surety. These bonds, under the law, were given for the benefit of all persons storing or selling grain or seeds in such warehouse. They were not for the benefit of the general creditors of the warehouseman, but were for the protection of those who stored or sold grain to the warehouseman.

In May, 1931, the Wheat Growers Warehouse Company could not sell, or dispose of, the large amount of grain that it had in its elevators. Its representatives went voluntarily to the Board of Railroad Commissioners, presented a petition to have the said Railroad Commissioners appointed as trustees. The Railroad Commissioners were appointed and the Wheat Growers filed an answer praying for its appointment, and turned over to the trustee all of the grain that it had in all of the elevators for the purpose of selling said grain and redeem-

ing the warehouse receipts and sale tickets. It was liable, as principal, for the payment of said receipts and sale tickets and the surety companies would only be liable for any balance necessary for the redemption of storage receipts and sale tickets after the proceeds from the sale of grain was exhausted. That was all that the trustee needed to collect from the surety companies, but it collected more than was necessary and it follows that the surplus belongs to the surety companies. Suppose they had collected the full amount of the bond from the surety companies and that there was a two hundred thousand dollar surplus. Could the general creditors come in and say they were entitled to that, or their proportionate share? Certainly not. That would be an overpayment and that is what happened in the instant case. More was demanded and received of the surety companies than they should have been required to pay. At the hearing on the report of the trustee, and before any of the money was paid, the representatives of the surety companies were present, insisting that the surplus belonged to the surety companies and demanding the proportionate share of each.

Section 6688, Compiled Laws 1913, reads as follows: "Whenever property of a surety is hypothecated with the property of the principal, the surety is entitled to have the property of the principal first applied to the discharge of the obligation." In the instant case the surety companies were entitled to have the property of the principal, upon the bond, exhausted first in the redemption of the storage receipts and sale tickets. The property of the principal was turned over for that purpose and the surplus belongs to the surety companies.

It is ordered that out of this surplus there be paid to the Maryland Casualty Company $9,200.21 and to the Hartford Accident and Indemnity Company $5,300.56.

CHRISTIANSON and MOELLRING, JJ., concur.

BURR, Ch. J. I concur in the result. Under the obligations of the bonds involved the surety companies are liable for the deficit on outstanding storage tickets in each elevator bonded, and up to the amount for which each elevator was bonded, irrespective of the fact there may have been a surplus in other elevators involved. The companies could have waited until the amount of the shortage in each elevator

was computed, and then have paid such shortage. But having paid to the Board of Railroad Commissioners, on demand and largely as an accommodation the amount demanded, and in excess of the shortage, they are entitled to a repayment of the amount overpaid. They are also entitled to be subrogated to the rights of the holders of the storage tickets in the assets of those elevators for which the bonds were paid.

I express no opinion as to the relative rights of the surety companies and other general creditors in the assets of the elevators in which there was no shortage on outstanding storage tickets.

NUESSLE, J. I am unable to agree with the full holding (as I understand it) of the majority opinion in this case. I do agree that the defendants are subrogated to all the rights of the holders of those storage receipts paid and discharged by them. My disagreement is with the holding respecting the rights of the ticket holders as expressly or impliedly defined in the majority opinion. It seems to me that the statutes considered and interpreted, contemplate that each warehouse operated as a unit shall be considered independently of all other warehouses owned and operated by the concern to which it belongs. It seems to me that this is the proposition for which the State contended in State ex rel. Larkin v. Wheat Growers' Warehouse Co. 63 N. D. 641, 249 N. W. 718, a proposition which we there sustained. In that case we said: ". . . we are of the opinion that the contentions of the appellant to the effect that any judgment on the bond must be for the net liability taking all of the elevators into consideration, cannot be supported." And in the concluding paragraph of that opinion we further said, in disposing of the question as to the expenses of administration: "It is stipulated that the expenses are reasonable, and, since the plaintiff is entitled to recover on the bond, it is also entitled to recover the expenses allocated to the warehouse at Burleigh." In effect we held that while the bond covered numerous warehouses, each warehouse stood by itself and that the recovery on account of default of any particular warehouse was not the aggregate of the bond but the sum of $5,000, fixed as the coverage for each warehouse. The fact that the warehouse company voluntarily turned over to the railroad commission as trustee all of the grain in all of its elevators to be applied in liquidating its storage tickets, can make no difference. The

commission as trustee can only act pursuant to the direction of the statute. And the statute requires that the grain from each warehouse be applied in satisfaction of the storage receipts on that particular warehouse. See § 28, chapter 155, Sess. Laws 1927. Holders of storage receipts issued by other warehouses can have no claim on such grain other than as general creditors. Section 5 of chapter 156, providing for the marshalling of assets, contemplates that the assets of each licensed warehouse (see § 28, chapter 155, and chapter 224, Sess. Laws 1931) shall be marshalled separately and not all jointly.

With respect to the matter of expenses of administration and interest on claims during the time when payment thereof is delayed, it seems to me that likewise each warehouse must stand separately and be liquidated separately. If a general expense is incurred some means must be devised whereby it can be allocated. If the grain in any particular warehouse is sufficient to discharge all storage receipts issued by that warehouse and cover all expenses attendant on the liquidation, then, well and good. Any excess above such requirements is subject to the claims of general creditors. The bond, so far as that particular warehouse is concerned, is discharged. If there is a deficiency the bond in the amount that it covers that particular warehouse is charged and to that extent the bonding company has a claim as a general creditor against the warehouseman. But a storage ticket holder has no preferred claim as against the other assets of the warehouseman. So the bonding company that has redeemed his tickets can have none.