[File No. 6311.]

ERNEST E. LEE, Respondent, v. ABE TOLCHINSKY and Joe Grainer as Individuals, and Doing Business Under the Name and Style of Tolchinsky and Grainer, a Co-partnership and the Northern Pacific Railway Company, a Corporation, and United States Fidelity and Guaranty Company, a Corporation, and

UNITED STATES FIDELITY AND GUARANTY COMPANY, a Corporation, Appellant.

(258 N. W. 276.)

Opinion filed December 31, 1934.

*Sullivan, Fleck & Sullivan,* for the appellant, United States Fidelity and Guaranty Company, a corporation.

*L. J. Wehe,* for respondent.

BURKE, J. This is an action to recover damages for the sale of infected hogs. All of the defendants, excepting the United States Fidelity and Guaranty Company, answered; and the said Fidelity and Guaranty Company filed a demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action against the Fidelity and Guaranty Company.

The demurrer was overruled and the defendant, the Fidelity and Guaranty Company appeals.

The plaintiff claims, in his complaint, that Abe Tolchinsky was licensed as a livestock buyer under Chapter 7 of the Laws of 1933; that he filed his bond in the sum of five thousand dollars with the defendant, United States Fidelity and Guaranty Company, as surety thereon, the material part of the bond being as follows, to-wit:

"STATE OF NORTH DAKOTA

Livestock Buyer's Bond.

"Know all men by these present, That Abe Tolchinsky, of the County of Burleigh and State of North Dakota, as principal, and United States Fidelity and Guaranty Company, of the City of Baltimore and State of Maryland, as surety, are held and firmly bound unto the Board of Railroad Commissioners of the State of North Dakota at Bismarck, North Dakota, for the use and benefit of any person dealing with such principal and/or his agent or agents in the penal sum of Five Thousand Dollars, good and lawful money of the United States,

for the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors, and assigns, firmly by these presents.

"In witness whereof, we have hereunto subscribed our names and affixed our seals this 11th day of August, A. D. 1933.

"The conditions of this obligation are such, That whereas, the principal hereof has been licensed as a buyer of livestock, at Bismarck, N. Dak., pursuant to chapter 7 of the Sessions Laws of the State of North Dakota for the year 1933, and as therein provided.

"Now, therefore, if the said Abe Tolchinsky and any, each and every one of his agents, shall faithfully discharge and perform his and/or their and/or its duties as such buyer of livestock and comply with all the laws of the State of North Dakota relative thereto and the regulations adopted by the Board of Railroad Commissioners of said State in connection therewith, and save harmless and protect any person dealing with said principal and/or his agent or agents, from loss, by reason of fraud, dishonesty, forgery and/or theft on the part of said principal and/or his agent or agents, and shall well and truly pay and discharge any and all liability said principal shall incur to any personal dealing with said principal and/or his agent or agents, by reason of acts of fraud, dishonesty, forgery and/or theft on the part of such principal and/or his agent or agents, then this obligation to become null and void, otherwise to remain in full force and effect."

He further alleges that about November 4, 1933, the defendants, Abe Tolchinsky and Joe Grainer did unlawfully and knowingly dispose of, sell and deliver to the plaintiff, Ernest E. Lee, thirty-four head of hogs, which were then and there infected and affected by an infectious and contagious disease known as hog cholera; that all of said hogs died from said disease and one hundred fifty-seven other hogs belonging to the plaintiff became infected with the said disease and died or were necessarily killed on account of said disease.

The law which requires a buyer of livestock to first procure a license is chapter 7 of the Laws of 1933, which is entitled "An Act for the licensing of direct buyers of livestock, regulating the conduct of such buyers, *and providing for the feeding and watering of livestock purchased by them, and providing a penalty.*"

Section 1 defines buyer as follows: *"As used herein, the term 'buy-*

*er' shall mean any person, co-partnership, association, or corporation, engaged in buying livestock, horses, cattle, hogs, sheep, poultry, direct from producers, their agents or representatives* (italics are ours), either for resale direct to packers and/or processors of livestock, and/or for packers and/or processors of livestock or shipment to terminal markets." A buyer may be an individual, a co-partnership, a corporation or association, and when licensed, may buy horses, cattle, hogs, sheep or poultry, and this applies to the buyer who buys direct from the producer.

Section 2 of the Act provides: "On and after July 1, 1933, all buyers of livestock as herein defined shall be duly licensed as hereinafter provided." "As herein defined" refers to the definition in § 1, namely: "any person, co-partnership, association, or corporation, engaged in buying livestock . . . direct from producers, their agents or representatives. . . ."

Section 3 provides that "Each buyer, before engaging in the business of buying livestock direct from producers at places other than public terminal livestock markets, shall annually on or before January 1, . . . file an application with the Board of Railroad Commissioners on a form prescribed by it for a license to transact such business." What business? Clearly the business of buying livestock direct from the producers. "The application shall state the nature of the business as hereinabove set forth. . . ." That is, whether it is to buy horses, cattle, hogs, sheep, or poultry, all or any of them direct from the producers. This section is limited also and applies only to a buyer of livestock direct from the producer as defined in § 1. "Each applicant (that is, applicant for license to engage in buying livestock) shall file with his application a surety company bond in the sum of five thousand dollars, in which the Commissioners shall be the obligee but which shall be for the purpose of protecting any person dealing with such applicant from loss by reason of facts of fraud, dishonesty, forgery and theft on the part of the principal." This provision in the law protects only those persons dealing with the licensee under the law and who is engaged in buying livestock direct from the producer. It does not contemplate the protection of any one except those who are dealing with the buyer of livestock as a buyer. The bond is to protect the producers of livestock against the licensee in the doing of the

things which he or it is licensed to do. The licensee is not licensed to sell livestock. The license is to buy direct from the producer; and it does not protect those who buy from the licensee. It protects only those who sell to him from the acts of fraud, dishonesty, forgery or theft on the part of the licensee.

Section 5 provides that "Each buyer shall keep such accounts, records and memoranda concerning his *buying transactions* (italics are ours) (not selling transactions but *buying transactions*) as may from time to time be required by the Commissioners." Section 6 relates to the buyer.

Section 7 provides: "On the date of purchase of livestock direct from the producer as hereinbefore specified, the buyer shall mail to the board of railroad commissioners a record in form satisfactory to that body, showing the grading of the animals, the number of animals of each grade included in the purchase, etc." It does not require him to make any such reports of sales. What the buyer does with the stock is not regulated by the act, except in § 8 the seller may require the buyer of his livestock to give the livestock feed and water. There is not one word in the act which regulates the sale of livestock by the buyer.

The bond says it is "for the use and benefit of any person dealing with such principal and/or his agent or agents . . ." The conditions of the bond are "That whereas, the principal hereof has been licensed as a buyer of livestock, at Bismarck, N. Dak., pursuant to chapter 7 of the Session Laws of the State of North Dakota for the year 1933, and as therein provided.

"Now, therefore, if the said Abe Tolchinsky and any, each and every one of his agents, shall faithfully discharge and perform his and/or their and/or its duties *as such buyer of livestock* (italics are ours) and comply with the laws of the State of North Dakota relative thereto and the regulations adopted by the Board of Railroad Commissioners of said State in connection therewith, and save harmless and protect any person dealing with said principal and/or his agent or agents, from loss, by reason of fraud, dishonesty, forgery and/or theft on the part of said principal and/or his agent or agents, and shall well and truly pay and discharge any and all liability said principal shall incur to any person dealing with said principal and/or his agent or

agents, by reason of acts of fraud, dishonesty, forgery and/or theft on the part of such principal and/or his agent or agents, then this obligation to become null and void, otherwise to remain in full force and effect."

It is clear that this bond protects any producer of livestock who sells livestock to a licensed buyer from loss by reason of fraud, dishonesty, forgery or theft on the part of the buyer, when he is acting as a buyer of livestock under a license to engage in buying livestock in North Dakota.

In the instant case, Tolchinsky did not buy any livestock of the plaintiff. There is not and could not be any loss under the bond by reason of fraud, dishonesty, forgery or theft as the law and the bond only cover his dealings as a buyer of livestock.

It follows that the overruling of the demurrer was error and the order overruling the demurrer is reversed, and the case against the United States Fidelity and Guaranty Company is ordered dismissed.

NUESSLE, MOELLRING and CHRISTIANSON, JJ., concur.

BURR, Ch. J. I concur in reversal but express no opinion to the effect that the principal of an agent, bonded as required, would not be protected by such bond as one "dealing with" the buyer.