**DAIRY DEPARTMENT of North Dakota, State Department of Agriculture, an Agency of the State of North Dakota, Appellant,**

v.

**HARVEY CHEESE, INC., Auto-Owners Insurance Company, National Bank of Harvey, Donald P. Pauly and the Bell Importing Co., a Corporation, also known as Bell Import Co., Nick Demetriou and Does I through Z, Inclusive, Appellees.**

Civ. No. 9541.

Supreme Court of North Dakota.

April 12, 1979.

As Modified April 17, 1979.

John W. Dwyer, Sp. Asst. Atty. Gen., Bismarck, for appellant.

Lamb, Schaefer, McNair & Larson, Fargo, for appellees Harvey Cheese, Inc., and Nat. Bank of Harvey; argued by L. M. Stenehjem, Jr., Fargo.

Pearce, Anderson, Thames & Durick, Bismarck, for appellee Natl. Farmers Organization; argued by Patrick W. Durick, Bismarck.

SAND, Justice.

This case involves the authority of the North Dakota Dairy Department to act as a trustee for the benefit of unpaid dairy producers upon the insolvency of a licensed and bonded dairy processor.[1] The dairy depart-

---

1. In the interests of convenience, those provisions of Ch. 4–30, NDCC, pertinent to this decision are set forth below:

4–30–02. *Licenses required—Fees—Term.*—Every producer-processor, peddler, distributor, and every person purchasing milk or milk products for processing or manufacturing, or owning, operating, or leasing a creamery, cheese factory, condensery, drying plant, ice cream plant, ice milk plant, cream station, milk plant, and every other business engaged in the processing or manufacturing of milk or milk products and doing business within this state shall obtain the license required by this section for each such place of business. . . .

4–30–03. *Bonding of purchasers of dairy products.*—Each applicant for license under section 4–30–02, who purchases milk or cream from a dairy producer, shall file with his application for license a surety bond or certified bank draft held in favor of the dairy department. . . . The commissioner shall be named as obligee, but the bond or draft shall be held for the purpose of protecting, and for the benefit of, any dairy producer, and the full and complete payment to the seller for all milk or cream purchased by the licensee; provided, however, that the aggre-

gate liability of the bonding company or the dairy department to all such persons shall in no event exceed the amount of such a bond or draft. . . .

4–30–04. *Dairy department to become trustee upon default in bond or certified bank draft.*—If any licensee defaults in the provisions of any bond or certified bank draft as provided for in section 4–30–03, he shall be deemed to be insolvent within the meaning of this chapter. The cause of action for damages upon any such bond or draft, and the amount recovered in any cause of action for the conversion of milk, or milk products, as the case may be, purchased by such licensee while such license is in force and effect, shall constitute a trust fund in the hands of the dairy department for all persons having a cause of action against such licensee on said bond or draft.

4–30–05. *Application by dairy department for appointment of trustee—Hearing—Appointment.*—Upon the insolvency of a licensee as defined in section 4–30–04, the dairy department shall apply to the district court of Burleigh County for the appointment of itself as trustee. . . . If it shall appear to the court that the licensee is insolvent within the meaning of this chapter and that it would be

ment appealed from an order determining the sale of inventory, property, and assets of Harvey Cheese, Inc., exceeded the authority of the dairy department and that the proceeds from such sale should be turned over to the United States District Court in Bankruptcy.

Chapter 4–30 of the North Dakota Century Code, entitled "Dairy Products Regulations," provides for the licensing and bonding of dairy processors and sets forth a procedure to be followed by the dairy department upon the insolvency of a licensed processor. In accordance with § 4–30–02 and § 4–30–03, NDCC, Harvey Cheese was licensed by the North Dakota Dairy Department and bonded in the amount of $24,000 for the year 1 July 1976 to 30 June 1977 as

a buyer of milk or cream. On 20 June 1977 the president of the National Bank of Harvey notified the dairy department that Harvey Cheese had ceased operations and did not have sufficient funds to pay dairy producers for milk and cream which had been purchased. On 30 June 1977, in accordance with § 4–30–05, NDCC, the dairy department filed a petition with the Burleigh County District Court seeking appointment as trustee for the benefit of dairy producer claimants. Following a hearing, the district court filed an order appointing the dairy department as trustee for Harvey Cheese. The order provided for the trustee to collect Harvey Cheese's surety bond as well as its real and personal property "including but not limited to cash, accounts receivable,

for the best interest of persons holding claims against the licensee for the purchase price of milk or milk products sold to such licensee or to his agent that the dairy department shall execute such trust, the court shall issue an order appointing the dairy department as trustee, without bond, and the dairy department shall proceed in the manner set out in this chapter without further direction from the court.

4–30–06. *Notice to file claims—When claims barred.*—The dairy department, as trustee, by publication of a notice published once each week for three successive weeks in the official newspapers of the principal counties in which the licensee operated, shall notify all persons having claims against the licensee to file the same with the department. Any such person who shall fail to file his claim with the department and to surrender to it any receipts which he obtained from such licensee within forty-five days after the last publication of such notice shall be barred from participation upon such claim in any fund marshaled by the department as prescribed in this chapter.

4–30–07. *Remedy of claimants—Separate action by claimant permissible.*—No claimant shall have a separate cause of action against the licensee's bond or certified bank draft unless the dairy department shall fail or refuse to apply for its own appointment as trustee as provided in this chapter. The provisions of this chapter shall not prohibit any claimant, either independently or in conjunction with other claimants, from pursuing concurrently with the dairy department any other remedy which he or they may have against the licensee, or against the property of the licensee, for the whole of his or their claims or for any deficiency which occurs after payments have been made from the trust fund.

4–30–08. *Appeal or compromising of action by dairy department.*—The dairy department may prosecute an action for any claims arising under the provisions of this chapter in any court, may appeal from any adverse judgment to the courts of last resort, and may settle and compromise any such action whenever in its judgment it will be for the best interests of the claimants. . . .

4–30–09. *Moneys collected on claims to be deposited in Bank of North Dakota.*—All moneys collected and received by the dairy department as trustee shall be deposited in the Bank of North Dakota pending the marshaling of said fund.

4–30–10. *Dairy department to file report upon recovery of trust fund—Notice to claimants—Approving or modifying report.*—Upon recovery of the trust fund, or so much thereof as it is possible to recover or as is necessary to pay all outstanding claims, the dairy department shall file its report in court showing the amount payable upon each claim, after recognizing any proper liens or pledges thereon or assignments thereof or deductions therefrom, with legal interest thereon. If the fund shall prove insufficient to redeem all claims in full, the fund shall be prorated among the claimants in such manner as the department shall deem fair and equitable. Thereupon the court shall cite such claimants upon such notice by mail as it shall prescribe to appear upon a day fixed in the notice and show cause why such report shall not be approved and distribution of said fund made as outlined in the report. Upon such hearing the court shall approve such report or modify the same as justice may require and shall issue an order directing the distribution of the fund and discharging the department from its trust.

equipment, supplies, and other assets . . ." for distribution in accordance with law and the order of the court.

In compliance with § 4–30–06, NDCC, the dairy department published notice in the official newspapers of the principal counties in which Harvey Cheese operated. The notice stated that all persons having claims of indebtedness against Harvey Cheese arising out of the purchase of milk or milk products must present such claims to the department within 45 days after the last publication of the notice. The last publication of the notice was made on 18 August 1977, therefore the last day for filing of claims was 3 October 1977. The notice provided that claims not filed by this latter date would be barred from participating in any trust funds marshaled by the dairy department. The department received claims within the 45-day period totaling $97,828.60 from 36 dairy producers.

Following notice sent to the named respondents in this case, the dairy department sold or leased certain perishable and miscellaneous property of Harvey Cheese in the amount of $1,867.26. This sale was approved by the district court on 13 October 1977. The trustee also accumulated cash in the amount of $7,648.33 found on the premises or transferred from the Harvey Cheese bank accounts.

The dairy department filed a motion on 26 September 1977 requesting approval of an interim distribution of available trust funds to the dairy producers who had filed claims. The district court issued an order to show cause why an interim distribution in accordance with the motion should not be made. A hearing was held on the motion and on 31 October 1977 the district court filed an order directing the $24,000 from bond proceeds be distributed to the dairy producers. The order also directed all persons claiming a secured interest in any of the perishable or miscellaneous properties previously sold by the dairy department, or in any of the inventory and equipment of Harvey Cheese, to notify the department of their claims. The court order authorized the dairy department to transfer to the

secured creditors the amounts claimed by those creditors. It directed that if no secured interests were claimed by 1 November 1977, the department could sell the inventory and equipment of Harvey Cheese and the proceeds from this sale and the earlier sale would be "exclusively distributed to the dairy producer claimants for the whole of their claims." The order also stated if the dairy producer claims were fully satisfied, any surplus properties accumulated by the trustee were to be distributed on a pro rata basis to the general creditors of Harvey Cheese.

In a separate order filed on the same day, the district court directed the $7,648.33 of cash that the trustee found on the premises or transferred from the Harvey Cheese bank accounts be distributed to the dairy producer claimants. A motion to reconsider this latter order was filed by the First Bank of North Dakota which alleged the cash represented proceeds from the sale of inventory in which it had a security interest. The trustee and First Bank subsequently reached a compromise on this issue and the motion to reconsider was withdrawn. The trustee also settled what it termed "conversion actions" and the proceeds from these settlements as well as from the earlier sale of miscellaneous property was ordered distributed by court order dated 6 February 1978.

On 27 December 1977, the district court approved the sale of additional miscellaneous property by the trustee in the amount of $105.

In accordance with the order filed on 31 October 1977, the trustee conducted an auction sale of the inventory and equipment of Harvey Cheese. Proceeds realized from this action totaled $26,805. The trustee subsequently filed a request to distribute available proceeds from the auction sale and the second sale of miscellaneous property. On 6 February 1978 the district court issued an order to show cause why such distribution should not be made. At a hearing on the order held 15 February 1978, the

National Farmers Organization (NFO)[2] appeared and objected to the proposed distribution on the basis that the sale of property and the distribution of proceeds therefrom exceeded the authority of the dairy department. After receiving briefs from the NFO and the dairy department, the district court issued an order on 8 March 1978 stating the sale of inventory, property and other assets of Harvey Cheese, although conducted in a commercially reasonable manner, exceeded the authority of the dairy department. The court suggested application be made by the dairy department to the United States District Court in Bankruptcy to turn over money and assets held by the dairy department. The dairy department filed a motion to reconsider and alter or. amend this order. Such motion was denied by order filed on 19 April 1978. The dairy department appealed from both the 8 March and the 19 April orders.

On appeal the dairy department sets forth the following as the issues on appeal:

A. Did the district court err in reversing its previous orders after the appeal period had expired on those orders, and after the dairy department, the creditors, and the dairy producers had relied upon those orders and had taken action consistent with those orders as directed by the district court.

B. Did the dairy department have the authority under Ch. 4–30, NDCC, to proceed against the property and assets of a dairy products processor licensee in order to satisfy the whole of the claims of the dairy producers.

C. Was the National Farmers Organization estopped under the doctrine of laches from participating in the funds marshaled by the dairy department trustee by virtue of not having filed a timely claim.

D. Does the United States District Court in Bankruptcy have jurisdiction over the proceeds and assets of the dairy products processor licensee.

E. Does the dairy department in this case have authority or standing under state or federal law to apply to the United States District Court in Bankruptcy.

I

Because we find the extent of authority of the dairy department in this action is paramount to a consideration of the other issues raised, we will discuss this question first.

Section 4–30–03, NDCC, provides the bond required of a licensed dairy processor shall name the dairy commissioner as obligee but shall be held for the benefit of any dairy producer. Under the provisions of § 4–30–04, this bond, together with the amount recoverable in any cause of action for the conversion of milk or milk products shall constitute a trust fund in the hands of the dairy department for all persons having a cause of action against the licensee on the bond.

■■■ Although we have been unable to find any legislative history on the provisions of Ch. 4–30 relevant to this case, it is apparent that the intent of the bonding requirement is to make the dairy processor strictly liable to the extent of the bond in all cases in which the dairy producer is not paid for milk or milk products purchased by the licensed processor. See, *Lee v. Tolchinsky*, 65 N.D. 292, 258 N.W. 276 (1934); 3 C.J.S. *Agriculture*, § 167. It is also apparent that the bond is not intended for the benefit of general creditors of the licensee, but only for the protection of those producers who sold milk or milk products to the processor. See, *Lee v. Tolchinsky, supra; Larkin v. Wheat Growers' Warehouse Co.*, 64 N.D. 491, 253 N.W. 757 (1934); *State v. Wheat Growers' Warehouse Co.*, 63 N.D. 641, 249 N.W. 718 (1933). Therefore, the collection and distribution of the bond proceeds to the producer claimants was proper

2. The NFO had filed a claim with the dairy department on 4 November 1977 in the amount of $199,089.73 for milk sold to Harvey Cheese.

The claim was denied by the trustee as untimely.

in this case.[3] The more important and difficult question in this case is what other assets may be properly collected, sold, and included in the trust fund for the benefit of dairy producers.

In addition to the bond proceeds, § 4–30–04, NDCC, provides the trust fund shall include "the amount recovered in any cause of action for the conversion of milk, or milk products, as the case may be, purchased by such licensee while such license is in force and effect . . . ." The district court in its order of 8 March 1978 concluded the amounts due for conversion of milk products included only the "accounts due for milk and milk products on hand as inventory." The dairy department in its brief before this court argued the district court's interpretation of a conversion action was overly restrictive. Counsel for NFO, on the other hand, contended in oral argument that the phrase "cause of action for the conversion of milk" has no meaning in the statute and particularly in the application of the statute to this case. Before we determine what funds, if any, were properly included in the trust fund as amounts collected on a cause of action for the conversion of milk, it is necessary to undertake a summary examination of the law of conversion.

Conversion has been defined as the wrongful exercise of dominion over the property of another in a manner inconsistent with or in defiance of the rights of the owner. *Brunswick Corporation v. Haerter*, 182 N.W.2d 852, 858 (N.D.1971); *Christensen v. Farmers State Bank of Richardton*, 157 N.W.2d 352 (N.D.1968); 89 C.J.S. *Trover & Conversion* § 1. Conversion is a tort having its origin in the old common law action of trover. The intent required is not necessarily a matter of conscious wrongdoing but rather the intent to exercise control or interference of such a degree as to re-

quire a forced sale of the plaintiff's interest in the goods to the defendant. Prosser, Torts § 15, 4th ed. (1971). The tort is generally committed by an unauthorized transfer or disposal of possession of goods to one who is not entitled to them. Also, conversion may occur by way of refusal to surrender possession of the property to one who is entitled to it. Where there has been no wrongful taking or disposal of the goods, but rather the defendant rightfully came into possession, demand and refusal to return are usually necessary to the existence of the tort. Prosser, *supra*.

Under common law, the plaintiff had to establish he was in possession, or entitled to possession, of the goods at the time of the conversion. Prosser, *supra*. This common law rule has been extended to allow recovery by one who is entitled to possession on demand, *Nichols & Shepard Co. v. Minnesota Threshing Mfg. Co.*, 70 Minn. 528, 73 N.W. 415 (1897), and some courts have gone as far as allowing recovery where the plaintiff has only a right to future possession. See, Prosser, *supra*, and cases cited therein at n. 38. Therefore, in its modern form, neither title nor immediate possession are absolute prerequisites to the maintenance of an action in conversion. The plaintiff must show, however, he had an interest in the property at the time of the alleged conversion that entitled him to possession, if not immediately, at least at some point in the future. Absent such an interest, an action for conversion cannot lie.

An action for conversion contemplates the establishment of facts in a proceedings upon which a judicial determination can be made.

In this case the dairy department acted summarily and failed to make a record demonstrating the producers had any interest in the assets of Harvey Cheese that

---

**3.** Because the proceeds from the trust fund are insufficient to satisfy all of the dairy producers' claims, we need not reach the issue of whether or not the producers' claims are to be first satisfied from the amounts recovered in any action for conversion, or if the bonding company is liable only to the extent of unsatisfied claims of producers, not to exceed the amount of the bond. See *Larkin v. Wheat Growers' Warehouse Company*, 64 N.D. 491, 253 N.W. 757 (1934); *State v. Wheat Growers' Warehouse Company*, 63 N.D. 641, 249 N.W. 718 (1933); § 36–04–15, NDCC; and § 60–04–06, NDCC.

would entitle them to possession of those assets. The record indicates the sales to Harvey Cheese were made on a credit basis. Milk or milk products were sold and delivered to the cheese company for which the producers would receive a check at the end of what appear to be approximate two-week pay periods. The claims submitted by the producers were for milk sold on credit for which no payment was received or for which payment was made by checks which were later dishonored. As sellers of goods on credit, the producers had no interest in the assets of Harvey Cheese entitling them to possession of those assets. See, *National Ropes, Inc. v. National Diving Services, Inc.*, 513 F.2d 53 (5th Cir. 1975). See also, *In re Helms Veneer Corporation*, 287 F.Supp. 840 (W.D.Va.1968).[4] Under the circumstances of this case the producers were simply general creditors of Harvey Cheese and as such there existed in neither the dairy department nor the producers any cause of action for conversion against either Harvey Cheese or any third-party transferee. Consequently, the only funds properly includable in the trust fund were the proceeds from the surety bond.

 The dairy department argued it was not limited to bringing an action for

conversion in its effort to make whole the claims of the producers. It contended that §§ 4–30–07 and 4–30–08, NDCC, when read together, give it the power to pursue any remedy for the benefit of the producers which the producers could have pursued. Section 4–30–07 permits a claimant or claimants to pursue concurrently with the dairy department any remedy, other than the right to bond proceeds, "which he or they may have against the licensee, or against the property of the licensee, for the whole of his or their claims or for any deficiency which occurs after payments have been made from the trust fund." The plain language of this statute simply allows a claimant or claimants to pursue an action for the conversion of their milk concurrently with an action brought by the dairy department. That the statute allows claimants to proceed concurrently with the dairy department in any action the department may prosecute does not automatically give rise to a corresponding right in the dairy department to pursue concurrently with the claimants any remedies or legal action the claimants might have.

 Nor does § 4–30–08, NDCC, enlarge the powers of the dairy department as to

4. Arguably, a cause of action for conversion may have existed had the producers or the dairy department proceeded in accordance with the recapture provisions of § 41–02–81, NDCC (2–702). (We are not contending that the Uniform Commercial Code has application. This question will be resolved when it is an issue after it has been argued and briefed.) That statute requires demand for the return of goods delivered on credit to an insolvent seller be made within ten days of receipt of the goods by the seller unless a written misrepresentation of solvency has been made by the seller within three months prior to delivery. In this case there is no indication a written misrepresentation of solvency was made by Harvey Cheese. Nor does the record indicate a demand for the return of milk was made by either the dairy department or the producers any time prior to or ten days subsequent to the ceasing of operations by Harvey Cheese. In addition, the dairy department has not contended § 41–02–81, NDCC (2–702), provided them with any possessory interests sufficient to support a cause of action for conversion. Accordingly, any interests arising under § 41–02–81, NDCC (2–702), which may have entitled the dairy department

or the producers to possession of milk or milk products sold to Harvey Cheese were waived by the failure to make the required demand within the ten-day limitation period. See *National Ropes, Inc. v. National Diving Services, Inc.*, 513 F.2d 53 (4th Cir. 1975); *In re Helms Veneer Corporation*, 287 F.Supp. 840 (W.D.Va. 1968); *Guckeen Farmers Elevator Co. v. Cargill, Inc.*, 269 Minn. 127, 130 N.W.2d 69 (1964); *In re Samuels & Co., Inc.*, 510 F.2d 139 (5th Cir. 1975), *reversed* 526 F.2d 1238 (5th Cir. 1976).

We also note there is no evidence that any of the producers had a purchase money security interest in the goods that might support a possible action for conversion. Such a security interest would have required a security agreement between Harvey Cheese and the individual producers or a reservation of title or possession by the producers. *National Ropes, Inc. v. National Diving Services, Inc., supra*; §§ 41–09–13, NDCC (9–113), 41–02–46, NDCC (2–401), 41–09–16, NDCC (9–203). There is no evidence, nor does the dairy department argue, that any of the producers reserved title in the milk or held a security agreement with Harvey Cheese covering the milk.

enable it to pursue actions other than those for the bond proceeds or for conversion of milk or milk products. That section authorizes the department to engage in any legal process necessary to collect on claims arising under the provisions of Ch. 4–30. Contrary to the dairy department's contention, § 4–30–08 is not an independent source of authorization to prosecute claims additional to those for bond proceeds or the conversion of milk products.

█ The dairy department argued that under § 4–30–08, it does not have to prove each element of conversion to have the proceeds from the settlement of such an action included within the trust fund. The department's argument would deserve more consideration if the proceeds it sought to have included in the trust fund were obtained from an admitted third party converter. In this case, third parties released certain claims they had against Harvey Cheese under the terms of a settlement with the dairy department. Although such a settlement freed the department from any competing interests of the settling party in the assets of Harvey Cheese, it did not automatically entitle the dairy department or the producers to the assets of the insolvent company. There were still general creditors having claims against Harvey Cheese and its assets and the producers could not defeat those claims through the terms of a settlement reached with other creditors, secured or otherwise.

█ Although the dairy department has the power to settle any claim arising under the provisions of Ch. 4–30, NDCC, that power does not entitle the department to summarily seize, sell, and distribute assets of the insolvent processor under the guise of labeling such assets the proceeds from actions for conversion. Nor does the fact the department has obtained certain funds automatically mean those funds will be distributed exclusively to producer claimants. The distribution of proceeds in the trust fund must be approved by the district court. That court has not only the right but the duty to determine if proceeds were properly includable in the trust fund in the first

instance. In this case the department has failed to demonstrate that any of the assets which it held for distribution were proceeds from even a colorable conversion action. Accordingly, only the proceeds from the surety bond were properly included in the trust fund for distribution to the producers.

## II

The dairy department asserted it was error for the district court in its 8 March 1978 order to effectively reverse its previous orders after the appeal periods on those prior orders had already expired. Although we agree with appellant's contention that public policy and public confidence in our judicial system require certainty and finality in the judgments of our courts, it is first necessary to determine if the 8 March 1978 order did in fact reverse final appealable orders for which the appeal period had expired.

The 8 March 1978 order of the district court stated in pertinent part:

"(1) That the authority of the Dairy Commissioner is limited to the collection of the bond, recovery of amounts due for conversion of milk products, i. e., accounts due for milk and milk products on hand as inventory.

"(2) That the proceeds from such collections, less costs involved, may be distributed prorata to milk producer claimants as a priority.

"(3) That the proceeds from sale of all other inventory, property or assets of Harvey Cheese shall be held by the Dairy Commissioner as specified in Section 4–30–09 of the North Dakota Century Code as such sales, although made in a commercially reasonable manner, exceed the authority of the Department."

We now examine the prior orders of the district court to determine if they were impliedly reversed by the 8 March 1978 order.

On 13 October 1977, the court confirmed the sale or lease, of certain perishable and miscellaneous property owned by Harvey Cheese in the amount of $1,867.26. Al-

though the 8 March order later declared those sales and leases exceeded the authority of the dairy department, the order did not require them to be somehow undone. A mere statement that an earlier order was in error is not in itself a reversal of the order if no attempt is made to change it or its effect.

■ The district court on 28 October 1977 ordered the bond proceeds distributed to the producer claimants on a pro rata basis. That part of the order is specifically approved by the subsequent order of 8 March 1978. The court in its October order also required notice be given to secured creditors to submit claims for any security interests in the assets of Harvey Cheese and if no interests were claimed in the assets, they would be sold free and clear of liens and the proceeds distributed to the producer claimants. We interpret this latter part of the order as simply an expression of the district court providing notice to secured creditors as to the intended future distribution of the assets of Harvey Cheese. We do not interpret the order as either authorizing or approving such a distribution.

In a separate order of 28 October 1977, the district court authorized the distribution of certain cash assets of Harvey Cheese. The 8 March order, although implying the earlier order distributing the cash was in error, did not reverse that order by requiring the cash be returned. Thus the 28 October 1977 order was not affected by the order of 8 March 1978. Although we agree with the district court that the order distributing the cash was in error, the appeal period for our review and correction of that order has expired. We, however, express no view as to the effect a possible future action in bankruptcy may have on the rights of producer claimants or the proceeds they received from the cash distribution.

On 20 December 1977, the district court approved the sale of other miscellaneous properties in the amounts of $105. Again, the 8 March order did not affect the confirmation and finality of the sale but simply stated it exceeded the authority of the dairy department.

The district court in an order dated 6 February 1978 authorized the distribution to producer claimants of other proceeds collected by the dairy department. The 8 March 1978 order did not disturb that distribution, and although we agree with the district court that the distribution was in error, the question was not presented to us for our correction within the proper appeal period.

At the time the district court issued its order of 8 March 1978 the appeal periods on all but one of its prior orders connected with this case had expired. (The appeal period on the order of 6 February 1978 subsequently expired without an appeal being taken.) We conclude, however, the 8 March order did not reverse any of these earlier orders of the district court from which the appeal period had expired although it did state some of those orders were made in error.

The real effect of the 8 March 1978 order was to prevent the distribution of certain proceeds in the possession of the dairy department obtained primarily through the sale of inventory and equipment of Harvey Cheese. Except for a part of the 28 October 1977 order this was the only order issued by the trial court concerning the distribution of these specific proceeds. The expression of the trial court contained in part of its order dated 28 October 1977 as to the intended distribution of proceeds from the sale of inventory and equipment was merely an indication of intended distribution and not an *order* of distribution. The provisions of § 4–30–10, NDCC, prohibit the distribution of trust funds until the funds have been recovered, and require a report to the district court setting forth the proposed distribution, a hearing on such proposed report, and an order by the district court approving the report and distribution. These requirements had not been accomplished at the time of the 28 October order. An order of distribution at that time would not have been appropriate. Expressions as to intended distribution of the proceeds do not constitute an order, therefore a subsequent reversal of those expressions by the trial court cannot be said to be error.

## III

The next issue set forth by the dairy department is whether or not the NFO was estopped by the doctrine of laches from participating in the funds marshaled by the department by virtue of not having filed a timely claim. The NFO, even if found a claimant properly entitled to participate in any funds marshaled by the dairy department, was barred from participating in the trust fund by reason of not having filed a timely claim. Section 4–30–06, NDCC, specifically provides that any claimant who fails to file a timely claim is barred from participation in the trust fund marshaled by the dairy department. The prohibition from participation, however, applies only to funds marshaled by the department and consequently has no application to participation in the distribution of assets that are not properly part of the trust fund.

In this case the NFO did not challenge the denial of its claim to participate in the distribution of the bond proceeds which are the only assets properly included in the trust fund. Nor did the NFO challenge in this action the distribution approved earlier by the district court of certain assets not properly included in the trust fund. Certainly as to these latter assets the dairy department would have a stronger argument as hearings were held on those specific distributions at which the NFO did not appear. The NFO did, however, appear at the hearing on the distribution of assets that are the subject matter of this appeal. The NFO at that hearing objected to the proposed distribution. The NFO is not barred by the doctrine of laches from objecting to a proposed distribution at a hearing conducted on that specific subject. Nor can we say the NFO is barred by the doctrine of laches from future participation in the distribution of proceeds found as a result of the hearing not to be properly includable in the trust fund.

## IV

The dairy department argued that under federal law the United States District Court in Bankruptcy has no jurisdiction over the proceeds from the property and assets of Harvey Cheese. The department based its argument on 11 U.S.C.A. § 11(a)(21) [5] and cites us to 1 Collier on Bankruptcy, ¶ 2.78 (14th ed. 1974) at 390.10 and 390.11, where it is stated:

"Where a non-bankruptcy receiver or trustee was appointed *more* than four months before the filing of the bankruptcy petition, the receivership or trustee proceedings will not be superseded . . . and the receiver or trustee need not surrender any property to the bankruptcy court, unless there proves to be a surplus over and above that necessary to satisfy lienors and claimants in the non-bankruptcy proceeding. The theory here is that an equitable attachment or lien not invalidated by § 67(a) arises in favor of creditors instituting action for the appointment of a receiver and that the state court so appointing will be permitted to administer the assets for the satisfaction of liens and claims." [Footnotes omitted.]

Clause 21 of § 11(a) U.S.C.A. prevents the bankruptcy court from requiring the surrender of property properly held by a receiver or trustee appointed in a state

---

**5.** The pertinent part of 11 U.S.C.A. § 11(a)(21) reads:

"(a) The courts of the United States hereinbefore defined as courts of bankruptcy . . . are hereby invested . . . with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in proceedings under this title, in vacation, in chambers, and during their respective terms, as they are now or may be hereafter held to—

(21) Require receivers or trustees appointed in proceedings not under this title, assignees for the benefit of creditors, and agents authorized to take possession of or to liquidate a person's property to deliver the property in their possession or under their control to the receiver or trustee appointed under this title . . . and in all such cases to account to the court for the disposition by them of the property of such bankrupt or debtor: *Provided, however,* That such delivery and accounting shall not be required . . . if the receiver or trustee was appointed, the assignment was made, or the agent was authorized more than four months prior to the date of bankruptcy."

court proceeding four months prior to the date of bankruptcy. The mere fact property is in the hands of such a state-appointed trustee or receiver does not act as a bar to the bankruptcy court from exercising jurisdiction over the same property voluntarily surrendered to it. When a state court has judicial custody of particular property it may surrender it to the bankruptcy court if convinced the property is properly an asset of the bankrupt's estate. 5 Remington on Bankruptcy § 2053 (1953). As stated in *Carling v. Seymour Lumber Co.*, 113 F. 483 (5th Cir. 1902):

> "The bankrupt law is equally binding on the state and the federal court, and we cannot doubt that the former will, on proper application, give full effect to it. Where assets are in the hands of the receiver of one court which legally and equitably belong to the trustee or receiver appointed by another court, comity requires, as a general rule, that application should be made for a proper order to the former court whose officer has possession of the property. This rule is reciprocal between the federal and state courts, each respecting the possession of the other. *Hagan v. Lucas*, 10 Pet. 400, 9 L.Ed. 470; *In re Tyler*, 149 U.S. 164 [13 S.Ct. 785, 37 L.Ed. 689]." 113 F. 483 at 491, *cert. denied* 186 U.S. 484, 22 S.Ct. 943, 46 L.Ed. 1261.

 In this case the proceeds from the alleged conversion currently in the hands of the trustee and under the jurisdiction of the state court are not properly includable as trust funds to be distributed by the dairy department because the department has failed to demonstrate to either the district court or this court that the proceeds were the product of colorable actions in conversion. They are, however, properly includable assets in a federal bankruptcy proceeding. While we do not attempt to define the jurisdiction of the federal bankruptcy court, should a bankruptcy proceeding be initiated and application be made to the state district court by the bankruptcy trustee, the district court is not prohibited from directing the proceeds not properly distributed as part of the trust fund be turned over to the federal trustee.

## V

Finally, the dairy department alleged it was error for the district court to direct the department to file an application in the United States District Court in Bankruptcy. The department contended only creditors of a debtor may file a petition for involuntary bankruptcy proceedings and the dairy department, not being a creditor under the federal definition of the term, nor authorized under state law to file a petition on behalf of producer claimants, does not have standing to make application to the bankruptcy court.

 We agree with the department that it had no authority under Ch. 4–30, NDCC, to file a petition for involuntary bankruptcy on behalf of producer claimants. Without deciding if the department would have standing before the federal bankruptcy court to make application to that court to assume jurisdiction over the proceeds the department now holds, we conclude § 4–30–09, NDCC, provides direction in the manner in which the funds should be released to the bankruptcy court. That section directs that moneys collected and received by the dairy department as trustee be deposited in the Bank of North Dakota pending marshaling of the fund. It does not limit the funds to only those which are for the sole distribution to producer claimants. Therefore, the situation before us would be somewhat similar to a hypothetical situation in which the dairy department had properly recovered proceeds from processor bonds and conversion actions in amounts in excess of producer claims. In either event, funds not to be distributed to producer claimants should remain deposited with the Bank of North Dakota until application is made for them to the state district court by a trustee in bankruptcy.

In summary, because the dairy department failed to demonstrate any producers had an interest in property that would entitle them to possession of that property such as would support an action for conver-

sion, only the proceeds from the collection of the processors' bond were properly included in the trust fund for distribution to the producer claimants in this case. The proceeds from the sale or collection of all other assets of Harvey Cheese which have not been distributed under court approval should be deposited with the Bank of North Dakota until such time as application for the proceeds is made by a trustee in bankruptcy. Accordingly, this case is remanded to the district court for modification of its 8 March 1978 order so as to conform with the views expressed in this opinion.

ERICKSTAD, C. J., PAULSON and PEDERSON, JJ., and LYLE G. STUART, District Judge, concur.