Tommy THOMPSON and Ted Thompson, d/b/a Thompson Livestock, Appellees and Cross–Appellants,

v.

NORTH DAKOTA DEPARTMENT OF AGRICULTURE, Appellant and Cross–Appellee.

Civ. No. 910308.

Supreme Court of North Dakota.

March 23, 1992.

Gary R. Wolberg of Fleck, Mather & Strutz, Bismarck, for appellees and cross-appellants; appearance by Tommy Thompson.

Kristina Moelter, Asst. Atty. Gen., Atty. Gen.'s Office, Bismarck, for appellant and cross-appellee.

Glen R. Bruhschwein of Mackoff, Kellogg, Kirby & Kloster, P.C., Dickinson, for amicus curiae, North Dakota Stockmen's Ass'n.

VANDE WALLE, Justice.

The North Dakota Department of Agriculture appealed from a district court judgment reversing its revocation of Tommy and Ted Thompson's livestock dealer's license and ordering the Department to accept their application for relicensure without special conditions. We reverse.

Tommy and Ted Thompson are South Dakota cattle buyers doing business as Thompson Livestock, a partnership. In 1987, they applied to the Department for a livestock dealer's license in the name of Thompson Livestock. The application designated Tommy and Ted Thompson and Darrell Nickelson as agents of the dealer. Nickelson bought cattle in North Dakota for Thompson Livestock during 1987 and 1988.

Beginning in late 1987, Nickelson began buying cattle in North Dakota for himself using an "Aladdin Ranch" account at a South Dakota bank. Neither Nickelson nor Aladdin Ranch was licensed as a livestock dealer in North Dakota.

In May 1988, Thompson Livestock applied for and received a new livestock dealer's license. Thompson Livestock again listed Nickelson as an agent. Nickelson made four purchases of cattle in July 1988 in which checks drawn on the Aladdin Ranch account were returned by the bank for nonsufficient funds. The Department received notice in August 1988 that Nickelson was no longer a designated agent of Thompson Livestock.

An administrative complaint was issued by the Department of Agriculture against Thompson Livestock for acts committed by its designated agent, Nickelson. After a hearing, the Commissioner of Agriculture suspended the Thompson Livestock dealer's license based on her conclusion that

the relevant provisions of the dealer's licensing statute imposed strict liability on a livestock dealer for the acts of a designated agent. After a rehearing, the Commissioner modified her order to provide that Thompson Livestock could apply for a new license by presenting written evidence that the sellers from whom Nickelson purchased cattle with nonsufficient-funds checks had been paid in full or otherwise had the debts satisfied.

Thompson Livestock appealed the Commissioner's order to the district court. The district court vacated the license revocation order, construing the statute as not imposing strict liability upon a cattle dealer.

On appeal from a district court judgment reviewing a decision of an administrative agency, we review the record before the agency and its decision rather than the decision of the district court. *E.g. Haugland v. Spaeth*, 476 N.W.2d 692 (N.D. 1991). Pursuant to section 28–32–19, NDCC, we are bound to affirm the agency's decision unless:

"1. The order is not in accordance with the law.

.    .    .    .    .

"5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

"6. The conclusions of law and order of the agency are not supported by its findings of fact."

*See Diegel v. North Dakota Workers Compensation Bureau*, 469 N.W.2d 151 (N.D. 1991).

In this appeal, the Thompsons argue that the order revoking their license was not in conformance with the law because the Commissioner interpreted section 36–04–03(4), NDCC, as making a dealer strictly liable for the cattle-buying activities of an agent, and that the evidence did not support a finding that they violated any provision of the statute. They further argue that the cattle sellers' efforts to require Nickelson to satisfy the debts constitutes an "election of remedies" which bars the revocation of their license.

██ The interpretation of a statute is a question of law fully reviewable on appeal. *E.g. Flermoen v. North Dakota Workers Compensation Bureau*, 470 N.W.2d 220 (N.D.1991). When construing a statutory provision, this court considers the whole statute to determine the intent of the legislature, deriving that intent by comparing every section and subsection as a part of that whole, and by considering other statutes on the same subject matter. *E.g. Ebach v. Ralston*, 469 N.W.2d 801 (N.D.1991). We attempt to harmonize statutes and to avoid conflicts between parts. *Id.* We normally defer to a reasonable interpretation of a statute by an agency so long as that interpretation does not contradict statutory language. *Haugland v. Spaeth, supra.*

Chapter 36–04, NDCC, establishes a regulatory scheme for the licensure and bonding of livestock dealers in this state. All dealers and agents must be licensed. NDCC § 36–04–03. Agents may not deal in their own names and may not act for a dealer unless designated by the dealer and licensed by the Department as an agent of the dealer. *Id.* In order to be licensed, a dealer must file a bond "for the purpose of protecting and for the benefit of any person selling livestock ... to the licensed dealer or the dealer's agent." NDCC § 36–04–05. The Commissioner must refuse to issue or renew a license if the dealer does not file a bond, does not demonstrate that it is solvent, or "[h]as been found by the commissioner to have failed to pay, without reasonable cause, obligations incurred in connection with livestock transactions." NDCC § 36–04–04(2).

The dispute between the Department and the Thompsons involves the interpretation of one provision of the chapter regulating livestock dealers. Section 36–04–03(4), NDCC, stated:

"Agents may not deal in their own names or issue a check or any other commercial paper except in the name of their principals when acting as an agent. A dealer is accountable and responsible for all the acts of a designated agent."[1]

---

1. Subsequent to the Commissioner's decision revoking the Thompson Livestock dealer's license,

the legislature amended the statute to explicitly provide that which the Commissioner interpret-

The Department interpreted this section as imposing strict liability upon a dealer "for all the acts of a designated agent." The object of the statutory scheme is to protect sellers from buyers. *See Lee v. Tolchinsky*, 65 N.D. 292, 258 N.W. 276 (1934). In furtherance of this object, the statute requires that buyers—whether dealers or designated agents of dealers—be licensed. In order to be licensed, a buyer must be covered by a bond and file proof of solvency. An agent's lawful participation in a sales transaction is the result of being licensed as an agent of a licensed dealer. The Department, therefore, interpreted the statute in a manner which protects sellers from the "unauthorized" acts of an agent by holding liable the person who secured the agent's entree to the sales ring, the licensed buyer who designated the agent.

The Thompsons argue that the first sentence of section 36–04–03(4), NDCC, which prohibits an agent from dealing in his own name or issuing any commercial paper except in his principal's name limits the liability of a principal to instances "when [the agent is] acting as an agent." Under this interpretation, Nickelson, who appeared to be covered by a bond because he was Thompson Livestock's licensed agent, would not have been, in fact, covered by any bond.

■ A statute is ambiguous if it is susceptible to differing but rational meanings. *Rott v. Connecticut Gen. Life Ins. Co.*, 478 N.W.2d 570 (N.D.1991). In construing ambiguous statutes, we may consider the object of the statute, other laws on the same subject, and the legislative history. *Id.;* NDCC § 1–02–39.

■ The provision relied on by Thompsons was added in 1971. S.L. 1971, Ch. 335, § 1. The legislative history indicates that at the time of the amendments some

agents used personal checks to make purchases for their principals and that this practice often resulted in nonsufficient-funds checks. Minutes of House Committee on Agriculture, H.B. 1178, Jan. 22, 1971 [comments of John Adams, Assistant Attorney General representing Dairy Commission]. As a consequence, the legislature adopted a prohibition on agents dealing in their own name and a requirement that checks be issued in the name of the principal. Nothing in the legislative minutes indicates that this amendment which requires agents to disclose their principals was intended to limit the original provision which made dealers responsible for "all the acts of a designated agent." While that language would not extend liability of a principal to acts of a designated agent that are unrelated to the business of the principal, it does extend that liability to all acts of the designated agent that are so related.

When we read this disclosure requirement with the other provisions of this chapter, it appears that a person licensed as an agent of a dealer and, also licensed as a dealer in his own right, who purchases cattle using a personal check might be presumed to be purchasing the cattle as a dealer, not as an agent. If, however, a purchaser who is licensed only as an agent uses a personal check, it is reasonable to treat the purchase as being made for the undisclosed principal. This is the construction adopted by the Department. Under this construction the agent violates the disclosure requirement of section 36–04–03(4), NDCC, but not the license requirement of section 36–04–03(1), NDCC, and the seller is protected. Under the Thompson construction the agent violates the license requirement and the seller is unprotected. The Department's construction is consist-

ed the statute to allow, the imposition of strict liability on a licensed dealer for the cattle-buying activities of a designated agent. The last sentence of section 36–04–03(4), NDCC, now reads: "A dealer is accountable and responsible for all the acts arising out of livestock dealings of a designated agent, whether authorized or unauthorized by the dealer." S.L. 1991, ch. 372 § 1.

Generally, the fact that the Legislature enacts an amendment to an existing statute is an indi-

cation that it thereby intended to change the original act. *City of Minot v. Knudson*, 184 N.W.2d 58 (N.D.1971). Here, however, the legislative history of chapter 372 (S.B. 2145) indicates the purpose of the amendment was to "make utterly incontestable what [The Department of Agriculture] believe[s] the law now clearly provides." *See* Minutes of Senate Committee on Agriculture, S.B. 2145, January 17, 1991; Minutes of House Committee on Agriculture, S.B. 2145, March 8, 1991.

ent with the statutory provisions which makes a dealer responsible "for all the acts of a designated agent," section 36–04–03(4), NDCC, and which require the Commissioner, upon a finding that a dealer has failed to pay "obligations incurred in connection with livestock transactions," to deny a dealer a license, section 36–04–04(2), NDCC. We conclude that the Department's construction of the statutory language is reasonable and that its construction furthers the legislative purpose of protecting livestock sellers.

The evidence presented at the administrative hearing showed that Nickelson was a designated agent of Thompson Livestock, that he purchased cattle in July 1988, that he paid for the cattle with nonsufficient funds checks, and that Thompson Livestock did not withdraw Nickelson's designation as its agent until August. From this evidence the Commissioner found that Thompson Livestock violated the statute and ordered its dealer's license suspended pursuant to section 36–04–10, NDCC.

Thompsons argue that the cattle sellers "elected" their remedy by obtaining a judgment against Nickelson. What the record discloses is a restitution order entered as a part of Nickelson's conviction for purchasing cattle without a dealer's license. *See* NDCC § 36–04–21. As a part of that restitution agreement, Nickelson was ordered to enter a confession of judgment in favor of the cattle sellers, presumably in civil suits brought by the sellers against Nickelson. The record contains no other evidence respecting the satisfaction of the restitution agreement or judgments against Nickelson. The language of the statute commands the Commissioner to refuse to issue or renew a license of an applicant who has been found by the Commissioner "to have failed to pay, without reasonable cause, obligations incurred in connection with livestock transactions." NDCC § 36–04–04(2)(c). The Thompsons, through the act of their designated agent, gave non-sufficient fund checks to sellers of livestock. They failed to pay an obligation incurred in connection with livestock transactions. The Thompsons have not demonstrated that the obligation was satisfied prior to the entry of the Commission-

er's order revoking their license. Absent proof that the obligation was satisfied, the proper place for the Thompsons to raise their contentions respecting the alleged judgment against Nickelson is in a petition for relicensure containing proof that the obligations have been paid in full or otherwise satisfied.

We conclude that the findings of fact made by the agency are supported by a preponderance of the evidence and that the decision is in accordance with the law. We, therefore, reverse the district court judgment.

ERICKSTAD, C.J., LEVINE and MESCHKE, JJ., and KIRK SMITH, District Judge, concur.

KIRK SMITH, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. Justice JOHNSON not being a member of this Court at the time this case was heard did not participate in this decision.